WILLIAM NICHOLSON, D/B/A NICHOLSON'S MOBILE HOME SALES, INC. *v.* KARL SCHRAMM AND DIANA SCHRAMM.

[No. 1-1273A222. Filed June 30, 1975.]

*William T. Hornaday, Hornaday, Winter & Todd,* of Bloomington, for appellant.

*Kenneth L. Nunn,* of Bloomington, for appellees.

ROBERTSON, C.J.—The defendant-appellant, Nicholson, is appealing from a $7400 judgment rendered by a jury in favor of the plaintiffs-appellees, Karl and Diana Schramm. The judgment was for damages to the Schramms for removal of a mobile home from their mobile home park, however, the jury found against Diana Schramm on her claim for personal injuries.

The several issues raised by Nicholson may be summarized as:

1. Whether the determination that the Schramm's lien upon a mobile home was valid and superior to a security interest claimed by a bank was contrary to the evidence and the law, and;

2. Whether punitive damages were properly awarded.

For the reasons set forth hereafter we affirm the judgment of the trial court.

The facts show that the Schramms operated a mobile home park in Bloomington, Indiana. In November of 1968, Karl was approached by a John Applewhite who stated he was in the business of purchasing mobile homes and renting them to students and other persons. Applewhite wanted to locate a number of mobile homes in Schramm's park and agreed to pay the lot rentals. Applewhite brought as many as nine mobile homes to the park and, at various times, rented those homes to other persons. The Schramms did not attempt to find renters for Applewhite's mobile homes, nor in any other way participated in his enterprise.

By December, 1969, four of Applewhite's mobile homes remained in the park, none of which were occupied. At that time the Schramms filed with the Monroe County Recorder a "Notice of Intent to Hold Hotel Keepers Lien" on the four mobile homes for the amount of accrued unpaid lot rentals. This notice was sent to holders of the security interest in the mobile homes, to whom Applewhite had also failed to make payment. The holder of the security interest in two of the mobile homes settled with the Schramms and removed them from the park.

The Bloomington National Bank (Bank) held a security interest in the two remaining mobile homes, having acquired them as the assignee of the interest claimed by Nicholson's Mobile Home Sales, the vendor of those two mobile homes.

In mid-September, 1970, one of the two remaining mobile homes was removed from the park by Nicholson without any

notice. Karl did observe the truck as it left the park with the mobile home and pursued it in his automobile. Karl pulled abreast of the truck at a stop light and informed the two men in the truck to not "ever come on my property again".

Towards the end of September 1970, the two employees of Nicholsons returned to Schramm's park and were in the process of removing the remaining mobile home when Diana approached them. When she became aware of their purpose she told them they were trespassing and requested them to leave. She asked for their identification and if they had any court papers, however, the men gave no answers. Diana testified that the gray haired man finally shouted at her and subsequently shoved her backwards. She also said that she was struck in the stomach several times by a jack handle while the men were connecting the tow truck to the mobile home. The two men completed hitching the mobile home to the truck and proceeded to take the mobile from the park. Diana was still standing between the front of the mobile home and the rear of the tow truck when it began to move, and after allegedly being struck several times by the moving trailer she jumped onto the tongue or hitch between the truck and the mobile home. The two men in the truck were aware of Diana being upon the hitch but they proceeded to tow the mobile home out of the park. The truck was stopped a couple of hundred feet down the highway by four police officers who ordered Diana to remove herself from the hitch. The two men were subsequently permitted to continue with the mobile home which was thereafter reconditioned and resold. Diana testified she was sick and upset for a period of time thereafter and that during the incident she was frightened, sickened, and humiliated.

The Bank had a standing agreement on sales of mobile homes by Nicholson under which the Bank would finance the sale to the buyer, and take an assignment of Nicholson's to repossess the mobile home, if necessary, and hold it for a period prior to resale.

The Schramms subsequently brought suit for Diana's injuries and the amount of their lien upon the mobile home. The resulting judgment is the subject of this appeal.[1]

Nicholsons first series of arguments urge that they possessed the superior lien. The several allegations of error urge that Schramm's knowledge of their "sellers lien" makes the Schramm's lien inferior and that Applewhite was not a guest upon which a Mobile Home Park Owners Lien could be imposed. Nicholson also complains of several instructions given by the trial court regarding liens.

Schramm's argument is that their lien is superior because of their possession of the property and that, in any event, Nicholsons' breach of the peace in repossessing the mobile home was unlawful.

We are of the opinion that the evidence demonstrated that the Bank, by way of Nicholson's assignment, possessed an unperfected purchase money security interest, as defined by IC 1971, 26-1-9-107, which says:

> "A security interest is a 'purchase money security interest' to the extent that it is
>   (a) taken and retained by the seller of the collateral to secure all or part of its price;"

Mr. Nicholson testified that most of Applewhite's mobile homes were financed by the bank and that Nicholson retained that interest and subsequently assigned it to the Bank after the sale.

Additionally, Mr. Nicholson testified that Applewhite had purchased four or five mobile homes from him. Nicholson was also aware of the location and intended leasing of these mobile homes. The significance of this testimony is to establish what type of "goods" the mobile homes were for the purpose of determining the necessity of perfecting the purchase money security interest. IC 1971, 26-1-9-109 says:

---

1. The Bank, originally a defendant, is no longer a party to this appeal.

"Goods are . . . (4) 'Inventory' if they are held by a person who holds them for sale or lease . . . Inventory of a person is not to be classified as his equipment."

We are of the opinion, because of the foregoing definition, that the mobile homes constituted inventory.

IC 1971, 26-1-9-302(1), states "A financing statement must be filed to perfect all security interests. . . ." (The several exceptions thereafter enumerated have no bearing on this case, nor do we find the property to be the "subject of a statute.") We must, therefore, conclude that the purchase money security interest in this appeal was not perfected by Nicholson for the reason that the record does not show that the required financing statement was, in fact, filed.

The question remains, however, of whether the Bank perfected the purchase money security interest.

Nicholson's transfer of the security agreement and debt instrument to the Bank was an assignment of chattel paper. IC 1971, 26-1-9-105(1)(b). Possession by the Bank perfected its security interest in the chattel paper (IC 1971, 26-1-9-305) but not the mobile home. An examination of the record does not reveal that any of the exclusions for a financing statement are applicable. See IC 1971, 26-1-9-302(3). That, coupled with the fact that there was no evidence tending to show the Bank filed a financing statement on the mobile home or received the assignment of a perfected security interest leaves Nicholson as well as the Bank with an unperfected security interest.

On the other hand, we are of the opinion that the Schramm's lien, based upon the applicable statutes, was perfected because they were in possession of the property.

Nicholson's contends that the Mobile Home Park Owner's Lien statute (IC 1971, 13-1-7-33) does not apply to Applewhite's mobile home because he was never a guest in the mobile home park as contemplated by the statute. That statute says:

"Lien on property of guest.—The owner, operator or caretaker of any mobile home park shall have an innkeeper's

lien or hotel keeper's lien upon the property of his guest, in the same manner, for the same purposes, and subject to the same restrictions as the innkeeper's lien or hotel keeper's lien."

The innkeeper's lien statute in part reads:

> "Lien on Baggage—Sale.—The owner or keeper of any hotel . . . shall have a lien upon any . . . articles of value brought into such hotel . . . by such person or persons for any and all proper charges due from such person or persons for food, lodging, entertainment, or other accomodations; and said owner or keeper shall have the right to detain such . . . articles of value until the amount of such charge shall have been fully paid . . ." IC 1971, 32-8-27-2.

We believe it to be clear that a mobile home park "guest", in many respects, is not necessarily identical to an innkeeper's "guest" when a comparison is made between the services and accommodations offered by a mobile home park and an inn. We further believe that it had to be the legislative intent to give a mobile home park owner a lien on the property of a person renting the plot while the innkeeper is to have a lien on the property of a person renting a room. As a result we hold that Applewhite was indeed a guest as contemplated by the mobile home park owners lien statute.

The only requirement for perfection of a mobile home park owner's lien is possession, which the evidence clearly shows as being vested in the Schramms. Their lien was, therefore, perfected and as a result superior to Nicholsons.

Concomitant with the superiority of liens argument is the Shramm's contention that Nicholson's self-help repossession was violative of IC 1971, 26-1-9-503, which proscribes a breach of the peace by a creditor who is recovering property. This is a restatement of long standing Indiana law. *Singer Sewing Machine Co.* v. *Phipps* (1911), 49 Ind. App. 116, 94 N.E. 793. As previously indicated in the foregoing facts there was testimony from which the jury could infer an assault, a battery, or both. Assault

and battery constitutes a breach of the peace. *Shireman* v. *Jackson* (1860), 14 Ind. 459. We are, therefore, compelled to the conclusion that the breach of the peace negates any argument regarding superiority of a lien and renders the wrongdoer liable for punitive damages.

We further hold that the foregoing discussion also supports the giving of the trial court's instruction on innkeepers liens, at least insofar as the arguments advanced by Nicholson are concerned.

Another instruction of which Nicholson complains reads:

"On September 24, 1970, there was in force in the State of Indiana a statute which provided that

When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a protected security interest unless the lien is statutory and the statute expressly provides otherwise."

Nicholson's basic contention is that the Schramms provided no services. We believe that the providing of rental or storage space does come under the category of services and that there was no error in the giving of this particular instruction. *Cf. Charlie Eidson's Paint & Body Shop, Inc.* v. *Commercial Credit Plan, Inc.* (1969), 146 Ind. App. 209, 253 N.E.2d 717.

Nicholson's next major argument is that error existed in the court's refusal to give the following instruction:

"On the ground that it would or might subject defendant to punishment twice for the same offense, exemplary damages may not be given where the act is punishable as a crime or, as otherwise stated, no exemplary damages can be assessed where the person is liable to both a criminal prosecution and a civil action."

and that it was error for the court to delete the last sentence of an instruction which read:

"Exemplary damages are recoverable when, and only when, the wrongful act or conduct complained of is accompanied by certain aggravating circumstances. These circumstances include malice, oppression, or fraud or deceit. If the injury

is inflicted in a spirit of oppressive malice or wantonness, or the acts are such as to indicate a heedless disregard of consequences, or are accompanied with violence or indignity, exemplary or punitive damages may be recovered. Punitive damages can not be given for mere negligence, although they may be awarded for injuries inflicted in a spirit of wanton disregard for the rights of others. Punitive damages are not generally given where the injury complained of is connected with real property, such as trespass."

Nicholson correctly states the general rule, as first set out in *Taber* v. *Hutson* (1854), 5 Ind. 322, that punitive damages may not be recovered if the defendant is subject to criminal prosecution for the same act. Conceivably, Nicholson's agents' conduct in removing the second mobile home amounted to trespass, breach of the peace, and assault and battery.

Three exceptions, applicable to the facts of this case, have been created to the *Taber* rule, however. The first is that conduct indicating a heedless disregard of the consequences will support an award of punitive damages. *True Temper Corp.* v. *Moore* (1973), 157 Ind. App. 142, 299 N.E.2d 844; *Capitol Dodge, Inc.* v. *Haley* (1972), 154 Ind. App. 1, 288 N.E.2d 766; *Moore* v. *Crose* (1873), 43 Ind. 30. Also, if the statute of limitations has run on the criminal charges punitive damages may not necessarily be precluded. *Cohen* v. *Peoples* (1966), 140 Ind. App. 353, 220 N.E.2d 665 (dictum) ; *True Temper Corp.* v. *Moore, supra,* (time had not expired as of time of civil trial). Last, a corporation may remain liable for punitive damages since it cannot be prosecuted for the criminal acts of its agents. *Indianapolis Bleaching Co.* v. *McMillan* (1916), 64 Ind. App. 268, 113 N.E. 1019; *Baltimore & OSWR Co.* v. *Davis* (1909), 44 Ind. App. 375, 89 N.E. 403.

We cannot conclude, therefore, that the court erred in refusing the first instruction.

Insofar as the amending out of the last sentence of the second instruction we see no error for the reason that the presence of oppressive, malicious, or fraudulent conduct vali-

dates an award of punitive damages even in trespass cases. *See: True Temper, supra.*

Next—we deem any error waived on the part of the trial court's apportioning the jury's verdict into compensatory and punitive damages for the reason that there was no objection to the forms of verdict submitted to the jury.

We finally conclude, as evidenced by the foregoing discussion that the court did not err in the overruling of the various motions for partial directed verdict and partial summary judgment.

Judgment affirmed.

Lowdermilk and Lybrook, JJ., concur.

NOTE.—Reported at 330 N.E.2d 785.