**Randall J. GOMEZ, and Nora Security, Inc., Appellants (Defendants Below),**

v.

**William E. ADAMS, Jr., Appellee (Plaintiff Below).**

No. 2–882A239.

Court of Appeals of Indiana, Second District.

April 17, 1984.

Rehearing Denied May 18, 1984.

James W. Riley, Jr., Mark B. Hillis, Callahan, Riley & Hillis, Indianapolis, for appellants Randall J. Gomez and Nora Security, Inc.

Ronald A. Wright, Harlow, Wright & Englert, Indianapolis, for appellant Nora Security, Inc.

Dwight Ritter, Mendelson, Kennedy, Miller, Muller & Hall, Indianapolis, for appellee.

SULLIVAN, Judge.

Randall Gomez and Nora Security, Inc., co-defendants, appeal a general jury verdict and judgment against them in the amount of $20,000.00 compensatory damages and $60,000.00 punitive damages upon a complaint alleging, somewhat generally, a right of recovery for false arrest, false imprisonment, malicious prosecution, libel slander, defamation of character, assault and battery, forgery, conversion, and theft. This suit was instituted by Adams subsequent to his arrest for disorderly conduct, public intoxication, and resisting arrest. The issues upon which the jury received specific final instructions did not include libel, slander, defamation, forgery, or theft except as the latter is embraced within the conversion theory.[1]

Restated and condensed, the issues bearing on the disposition of this case are as follows:

(1) Whether the trial court erred in denying Gomez's motion for summary judgment on the issue of his liability to Adams, which motion was predicated upon Gomez's discharge in a prior bankruptcy proceeding.

(2) Whether there was probable cause to arrest, detain, and prosecute Adams for disorderly conduct, public intoxication, and resisting arrest.

(3) Whether Nora Security, under the theory of respondeat superior, may be held vicariously liable as a result of Gomez's acts of conversion and forgery.[2]

(4) Whether the circumstances surrounding the forging of Adams' endorsement on a stolen check and the use of Adams' check-cashing card to cash the forged check resulted in libel, slander, and defamation of character by Gomez.

(5) Whether the giving of an instruction to the jury to the effect that damages could not be allocated between Gomez and Nora Security was erroneous and prejudicial to Nora Security.

(6) Whether the award of punitive damages must be reversed.

---

1. We note that throughout the pleadings and trial, the parties referred to various acts in a generic rather than technical sense, and used some words interchangeably.

2. I.C. 34–4–30–1 (Burns Code Ed.Supp.1983) creates a civil cause of action to be brought by one suffering pecuniary loss as a result of acts defined in I.C. 35–43, the Offenses Against Property Act, including forgery (I.C. 35–43–5–2), theft (I.C. 35–43–4–2), and conversion (I.C. 35–43–4–3).

## FACTS

On the evening of June 22, 1980, Adams attended a party at a northside Indianapolis apartment complex. He remained at the party for approximately six hours, until 3:00 A.M., consuming several beers while there. Shortly after Adams left the party, the car in which he and a friend were traveling ran off the road into a ditch and became stuck in mud. After unsuccessful attempts to push the car out of the mud, Adams decided to return to the party for help. Once back at the apartment complex, Adams could not remember the precise location of the apartment in which the party had been, but he knocked on the door of an apartment in which he thought the party had been located. A Mr. Lewis (Lewis) answered the door and, in response to Adams' inquiries, informed Adams that there had been no party in his apartment—Adams was mistaken. At that time, Lewis observed Adams staggering, and later testified that in his opinion, Adams was drunk and didn't know where he was. Lewis closed the door and went back to bed only to be reawakened by Adams, adamantly pounding on his door, loudly insisting that the party had been at the Lewis apartment. On the third repetition of this scenario, Lewis told Adams that he was calling security if the disturbance persisted. The third incident prompted Lewis to phone a complaint to Nora Security, Inc. (Nora Security) which provided security services for the complex.

At 4:30 A.M., Nora Security dispatched security officer Randall Gomez (Gomez) to the apartments to investigate. When Gomez received the dispatch, he was parked at Dunkin Donuts in his security vehicle conferring with security officer Timothy Green (Green) who had just gone off duty and was parked in his own security vehicle. Hearing the call, Green volunteered to follow Gomez to the apartments to provide assistance. At this time, Gomez was authorized to exercise special deputy powers. Green, however, had no arrest or police powers.

Before Gomez and Green arrived, Adams had returned to the parking lot of the complex, found an unlocked car, crawled into the rear seat, and either fell asleep or passed out. When the security officers arrived at the complex, Lewis directed them to the car in which Adams was sleeping. Gomez proceeded to direct the lights of his Nora Security vehicle at the automobile, and then opened the door of the car in which Adams had passed out to arouse him. Only with considerable difficulty was Gomez able to get Adams out of the car. According to Adams, he was slapped, grabbed, and roughly hauled from the car, although testimony is conflicting. When Adams finally emerged on the opposite side of the car, he was met by Gomez and asked for his identification.

The testimony and conclusion of all who observed Adams at this time was that he was intoxicated. He smelled of alcohol, his speech was confused and incoherent, he was unable to answer questions, didn't seem to know where he was, and he staggered, requiring the support of the officers to maintain his balance. He also experienced considerable difficulty in coordinating the physical motions necessary to extract his wallet to produce identification. Once Adams managed to produce identification, Gomez returned with it to his vehicle to radio for further information, leaving Adams with Green. Upon the momentary departure of Gomez, Adams attempted to leave the scene and was, thereafter, physically restrained by Green while Gomez came to his aid. Each of the security officers involved in the incident, including Lieutenant Guffey who had arrived in the meantime, testified that Adams became loud, angry, and hostile. He kicked at the officers, physically resisted their efforts to restrain him, and screamed profanities at them throughout the ordeal. Together, Gomez and Green handcuffed Adams and placed him face down on the ground when he continued to resist. It is Adams' testimony that the security officers kicked him while he was on the ground, although this is denied.

In conformance with Nora Security procedures for arrest, a Marion County Sheriff's Deputy was requested by radio to come and take custody of Adams to transport him to the city lock-up. When the deputy arrived with a police wagon, Gomez turned over Adams, Adams' driver's license, and the paperwork necessary to Adams' arrest, but retained the remaining items of Adams' personal identification including a Preston-Safeway check-cashing card. According to Gomez, he had attached these items to a clipboard in his vehicle while completing the paperwork for Adams' arrest and the clipboard had fallen to the floor of the vehicle where it remained until the end of Gomez's shift.

At the end of his shift, around 8:00 A.M., Gomez returned to the Nora Security office and transferred all objects, including Adams' papers, into his own vehicle, then went home.

The following afternoon, Gomez, in his own car, ran out of gas near a Preston-Safeway store on the northside of Indianapolis. At the time, Gomez had no money and was experiencing financial difficulties. Seeing the clipboard containing Adams' other pieces of identification still in his car, Gomez decided to cash a stolen check at Preston-Safeway using Adams' Preston-Safeway check-cashing card and forging Adams' name.[3]

Gomez filled out the check in the amount of $142.00, payable to William Adams, signed a false name at the bottom of the check, and then endorsed the check in Adams' name. A subsequent police investigation into the forgery led first to William Adams, and then to Gomez who turned himself over to the police and confessed.

As a result of these incidents, Adams was charged, initially, with public intoxication, disorderly conduct, and resisting arrest. These charges were later dropped when, at trial, Gomez was unable to appear as a witness because he, himself, was serving jail time in accordance with a plea agreement he had entered into regarding the forgery and two counts of theft. Charges were also filed against Adams for forgery, but were dropped when Gomez was found to be the culprit. Adams then brought the action against Gomez and Nora Security from which this appeal results. Shortly after Adams filed suit, Lieutenant Guffey of Nora Security refiled charges against Adams for resisting arrest, disorderly conduct, and malicious trespass. This second prosecution resulted in a jury trial in which Adams was convicted for disorderly conduct. Also, shortly after Adams filed suit, Gomez obtained a discharge of his debts in a bankruptcy proceeding which allegedly discharged Adams' claim against Gomez and barred suit thereon.

## I.

### EFFECT OF BANKRUPTCY DISCHARGE UPON GOMEZ'S LIABILITY TO ADAMS

■ Gomez contends that the trial court erroneously denied his motion for summary judgment on the issue of personal liability to William Adams because his prior discharge of Adams' claim in a bankruptcy proceeding established an absolute defense, thereby barring suit on the issue. Adams, on the other hand, urges that the trial court properly denied Gomez's motion because there were genuine issues of material fact regarding (1) the dischargeability of his claim pursuant to § 523(a)(6) of the Bankruptcy Code, and (2) an alleged absence of notice of the pendency of the

---

**3.** The check Gomez cashed was a blank corporate check which had been stolen from Omnibus George & Company, Inc., a northside business for which Nora Security provided security services. The evidence is conflicting as to the manner in which this blank check came into Gomez's possession. Gomez claims that it was among the personal papers taken from Adams earlier that day. However, the evidence also supports an inference that Gomez had stolen the check himself, because he had provided security for the office building in which the company was located and had keys and access to parts of the building. This issue, however, was not tried in the instant case.

discharge pursuant to § 523(a)(3) of the Bankruptcy Code.[4]

■ A motion for summary judgment is to be granted only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Donahue v. Watson* (4th Dist.1980) Ind.App., 411 N.E.2d 741. The party seeking summary judgment has the burden to establish that there is no genuine issue. Conversely, a plaintiff opposing summary judgment may not rest upon mere allegations of his complaint, but must diligently contest the motion and bring forward sufficient factual matter to controvert the moving party's assertion that no genuine issue exists. *Matter of Belanger's Estate* (4th Dist.1982) Ind.App., 433 N.E.2d 39; *Associates Financial Services Co. of Kentucky, Inc. v. Knapp* (1st Dist.1981) Ind.App., 422 N.E.2d 1261.

Upon his motion, Gomez asserted, as an affirmative defense, his discharge in bankruptcy which, if applicable, would entitle him to judgment as a matter of law. *See* Trial Rule 56 and 8(E). In support thereof, Gomez submitted (1) a certified copy of his voluntary bankruptcy petition, filed July 14, 1980, and amended on October 1, 1980 to include Adams' unliquidated claim on Schedule A–3—Creditors Having Unsecured Claims Without Priority, (2) a certi-

fied copy of a notice of the pendency of the discharge dated October 14, 1980, sent by the Clerk of the Bankruptcy Court to William E. Adams at 9139 E. 46th St., Indianapolis, Indiana, and (3) a certified copy of the order granting discharge, dated October 29, 1980, which provides as follows:

"It appearing that the person named above has filed a petition commencing a case under title 11, United States Code on Jul[sic] 14, 1980, that an order for relief was entered under chapter 7 and that no complaint objecting to the discharge of the debtor was filed within the time fixed by the court [or that a complaint objecting to discharge of the debtor was filed and, after due notice and hearing, was not sustained], it is ordered that

1. The above-named debtor is released from all dischargeable debts.

2. Any judgment heretofore or hereafter obtained in any court other than this court is null and void as a determination of the personal liability of the debtor with respect to any of the following:

(a) debts dischargeable under 11 U.S.C. § 523;

(b) unless heretofore or hereafter determined by order of this court to be nondischargeable, debts alleged to be excepted from discharge under clauses (2), (4) and (6) of 11 U.S.C. § 523(a);

---

4. In this regard, we would note that Gomez filed his motion for summary judgment on November 3, 1981. The trial court heard arguments on the motion on November 6, 1981, taking the motion under advisement. Adams filed an Agreed Entry from the Bankruptcy Court on November 16, and the trial court denied summary judgment on November 17, 1981.

Trial Rule 56(C) requires the motion for summary judgment to be served at least ten days before the time fixed for hearing thereon. In this instance, the court heard arguments on the motion three days after it was filed. The time of the hearing contravenes the clear import of Trial Rule 56(C). However, because none of the parties objected, and because this infringement of the ten day rule is not here raised as an issue, the defect is waived. *Ahnert v. Wildman* (2d Dist.1978) 176 Ind.App. 630, 376 N.E.2d 1182, 1187.

The circumstances here are distinguishable from those set forth in *Commissioner, Indiana State Highway Department v. Collins* (1981) and

*Otte v. Tessman* (1981) consolidated at Ind., 426 N.E.2d 660. In both cases, the trial court entered summary judgment without fixing a time for hearing on the motion, and before the non-moving party had filed evidentiary matter in opposition to the motion. In *Collins,* the trial court entered summary judgment six days after the motion had been filed, and in *Otte,* summary judgment was entered some five and one-half months after the motion was filed. In both cases, the non-moving party argued that the action of the trial court was prejudicial. The Indiana Supreme Court agreed and adopted the view expressed in Judge Staton's dissent in *Otte v. Tessman* (3d Dist.1980) Ind.App., 412 N.E.2d 1223, 1231–1232, which would require strict adherence to the dictates of Trial Rule 56(C).

The case before us is distinguishable because the trial court here, without objection, conducted a hearing, albeit a premature hearing. Therefore, it is appropriate to disregard the failure to comply with the letter of T.R. 56(C).

(c) debts determined by this court to be discharged under 11 U.S.C. § 523(d).

3. All creditors whose debts are discharged by this order and all creditors whose judgments are declared null and void by paragraph 2 above are enjoined from commencing, continuing or employing any action, process or act to collect, recover or offset any such debt as a personal liability of the debtor, or from property of the debtor, whether or not discharge of such debt is waived."

▇▇ Because a plea of discharge in bankruptcy is an affirmative defense, the debtor bears the burden of establishing the discharge. However, the burden is not onerous inasmuch as a certified copy of the order of discharge, when placed in evidence, is a *prima facie* defense to any suit against the debtor based upon a claim existing at the time the debtor filed his petition in bankruptcy. *Kreitlein v. Ferger* (1915) 238 U.S. 21, 35 S.Ct. 685, 59 L.Ed. 1184; *Woerter v. David* (1941) 311 Ill.App. 595, 37 N.E.2d 448. A creditor who seeks to defeat the effect of discharge must prove that his claim was not duly scheduled, *Kreitlein, supra,* or that it is excepted from discharge by other provisions found in § 523(a) of the Bankruptcy Code. "[A] debtor is discharged, subject to an exception, and one who would bring himself within the exception must offer evidence to do so." *Hill v. Smith* (1923) 260 U.S. 592, 43 S.Ct. 219, 67 L.Ed. 419.

Adams urges that his claim falls within the exceptions to discharge provided in § 523(a)(3) and (6) of the Bankruptcy Code in that (1) he received no notice of the pendency of the discharge, and (2) his claim is predicated upon action of a willful and malicious nature which is not subject to discharge. The pertinent provisions of the Code are as follows:

"§ 523. Exceptions to discharge.

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request;

\* \* \* \* \* \*

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;"

## (A)

### *Dischargeability of Claim Predicated Upon § 523(a)(6)*

▇▇ At first blush, it would appear that Adams' contention regarding the nondischargeability of his claim under § 523(a)(6) has validity in that at least some of the causes of action sued upon are of an arguably willful and malicious nature, and therefore excepted from discharge. However, § 523(a)(6) must be read in conjunction with § 523(c) which provides that the Bankruptcy Court will, nonetheless discharge debts of the type specified in § 523(a)(6) "unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section." The order of the Bankruptcy Court specifically states that "no complaint objecting to discharge of the debtor was filed within the time fixed by the Court ...." Upon that basis, it ordered Gomez discharged from all debts including "debts alleged to be except-

ed from discharge under clauses (2), (4) and (6) of 11 U.S.C. § 523(a)." Therefore, inasmuch as § 523 of the Bankruptcy Code embraces the dischargeability of Adams' claim against Gomez, and because Adams did not object to discharge of the debt nor did he file a complaint to determine the dischargeability of the claim in the Bankruptcy Court, we view the order of the Bankruptcy Court discharging the claim as a final and binding adjudication of the matter with respect to the asserted exception of § 523(a)(6). Furthermore, we note that in any event, this court has no jurisdiction to determine the dischargeability of claims arising under paragraphs (2), (4) and (6) of § 523(a) of the Bankruptcy Code in that exclusive jurisdiction to determine the dischargeability of such claims has been vested in the Bankruptcy Courts. *In re Burns* (D.Kan.1972) 357 F.Supp. 176; *In re Peterman* (E.D.Pa.1980) 5 B.R. 687. *See also* Advisory Committee Note to Bankruptcy Rules, Rule 4007(c).

### (B)

*Whether Adams' Claim Survives the Bankruptcy Discharge Under § 523(a)(3)*

Under § 523(a)(3) of the Bankruptcy Code, a creditor's claim will survive the bankruptcy and will not be discharged if the debtor did not list or schedule the claim in time to permit the creditor to file a timely proof of claim, and, in the case of a claim arising under paragraphs (2), (4), or (6), in time to file a complaint to determine the dischargeability of the debt, unless the creditor had "notice or actual knowledge of the case in time for such timely filing and request." Section 521 of the Code sets forth the debtor's duties. Among those, he is required, under subsection (1), to file a list of creditors, a schedule of assets and liabilities, and a statement of his financial affairs. Bankruptcy Rule 108, which was in effect at the time of this proceeding, requires the schedules to be filed in the manner prescribed by Official Form No. 6. The Official Form requires the name and complete mailing address of the creditor,

and, if the information is unknown to the debtor, he is to so state.

In the matter of scheduling names and addresses of creditors, courts have consistently required the debtor to exercise care, for the purpose of the requirement is to enable the sending of notices to the creditors so that they might have knowledge thereof, and opportunity to protect their interests.

In *King v. Harry* (D.C.D.C.1955) 131 F.Supp. 252, 254, it was held:

"A discharge in bankruptcy is a privilege. It is not a one-way street. The bankrupt has certain obligations to fulfill and his creditors, already losers, are at least entitled to notice before their property is taken, in the absence of some good and sufficient explanation to the contrary. For this reason, and for the reason that the sections of the Act requiring correct scheduling are for the benefit of creditors and not the debtor, a bankrupt must exercise great care to schedule his assets and names and addresses of ... his creditors properly.

At the same time the thrust of the Bankruptcy Act is to aid one who has fallen on hard times so that small technicalities and mere irregularities in the schedules should not be determinative in barring a discharge. It is too much to ask that the bankrupt be held to insure the absolute accuracy of the schedule. A schedule which lists a creditor's address, even though incorrectly, is *prima facie* sufficient for the purpose of a discharge and the creditor has the burden to show that his particular debt should not be discharged, although the very presence of factual error is enough to put the bankrupt to his defense to show to the Court what efforts he made to assure its accuracy. See *Kreitlein v. Ferger*, 1915, 238 U.S. 21, 35 S.Ct. 685, 59 L.Ed. 1184." (Other citations omitted.)

■ Gomez scheduled Adams' claim for $60,000 on Schedule A–3 which accompanied his amended bankruptcy petition. Adams' address is listed on the schedule as "9136 E. 46th Street, Indianapolis, Indiana

46229." This is the address to which the Clerk of the Bankruptcy Court sent the notice informing Adams of the pendency of the discharge. In Adams' appellate brief, he states that he did not live at this address; that he lived in Muncie at the time and that he had no knowledge or notice of the bankruptcy discharge until shortly before the trial of the instant case. However, we must view this matter from the perspective of the trial court at the time at which the summary judgment motion was before the court. Gomez clearly met his burden to establish the bankruptcy discharge as a *prima facie* defense by filing the order of discharge along with his motion. At that juncture, it was incumbent upon Adams to come forward, as required by Trial Rule 56(E), to oppose the motion by setting forth specific facts showing that there was a genuine issue for trial. *Shideler v. Dwyer* (1981) Ind., 417 N.E.2d 281; *Cunningham v. Universal Battery Division-Yardney Electric Corporation* (2d Dist.1976) 170 Ind.App. 166, 170, 352 N.E.2d 83, 86. Specifically, Adams was required to show, by affidavit or otherwise, that he did not have notice or actual knowledge of the bankruptcy discharge, or that his claim was not properly scheduled in the documents accompanying Gomez's bankruptcy petition. In this regard, Adams did respond by filing with the trial court an "Agreed Entry" from the Bankruptcy Court which, as is relevant to the issue of notice, states:

> "Creditor Adams has alleged that no Notice of said proceeding was provided in a timely manner and in accord with § 523(a)(3)(B). Creditor Adams alleges that the debt of Gomez is nondischargeable." Record at 166.

The statement contained in the "Agreed Entry" does not set forth facts showing a genuine issue for trial. It is merely an unsupported allegation, in this instance, differing little from an allegation set forth in a pleading. Adams did not respond with any other evidence which would disclose a genuine issue of fact regarding the alleged absence of notice. Therefore, he did not meet his burden to overcome Gomez's *prima facie* defense of discharge in bankruptcy. Gomez was entitled to judgment as a matter of law.

Even were we to view the matter of adequate notice in this instance substantively rather than procedurally, the evidence contained in the trial court record discloses that the scheduling of Adams' claim in the bankruptcy petition and notice thereof was adequate as a matter of law. There is no testimony nor any other evidence of record to bear out Adams' contention that he received no notice. The record indicates that Adams was in fact living at the Indianapolis address on East 46th Street—the address to which the bankruptcy notice was sent—during the summer of 1980. The record does not disclose when Adams moved from this address nor does it disclose the precise location of any residence thereafter. Consequently, even if Adams had produced sufficient facts to entitle him to trial on the issue of notice—and this he clearly did not do—he nevertheless failed at trial to overcome Gomez's *prima facie* defense by placing into evidence any fact which would show inadequate notice. Accordingly, we reverse and vacate the judgment against Gomez.[5]

The issues which remain affect only the liability of Nora Security. However, because Nora Security's liability on all but one of the causes of action herein is predicated on respondeat superior, it is nevertheless necessary to look to those acts for which Gomez ostensibly incurred liability.

## II.

### PROBABLE CAUSE FOR ARREST

Nora Security contends that liability for false arrest, false imprisonment, and malicious prosecution may not be imposed

---

5. The seemingly harsh result of Adams' omission is largely mitigated by an agreement between Adams and Gomez, entered into one day before the trial of this case, which provided that, should judgment be rendered in favor of Adams, Adams would not enforce the judgment against Gomez.

in this instance because of the presence of probable cause.[6] Proof of absence of probable cause is essential to a recovery for false arrest. *City of South Bend v. Fleming* (3d Dist.1979) Ind.App., 397 N.E.2d 1075. Likewise, a showing of lack of probable cause is necessary to a successful suit for malicious prosecution. *Aluminum Co. of America v. City of Lafayette* (2d Dist. 1980) Ind.App., 412 N.E.2d 312; *Satz v. Koplow* (4th Dist.1979) Ind.App., 397 N.E.2d 1082. Probable cause for arrest is demonstrated by facts and circumstances known to the arresting officer which would warrant a man of reasonable caution and prudence in believing that the accused had committed or was committing a criminal offense. *Funk v. State* (1981) Ind., 427 N.E.2d 1081.

Gomez arrested Adams for disorderly conduct,[7] public intoxication,[8] and resisting arrest.[9] From the facts hereinbefore set forth it is evident that security officer Gomez had probable cause to arrest Adams for the enumerated offenses. Given the existence of probable cause, the judgment, insofar as it may be premised upon false arrest and malicious prosecution, is in error.

With regard to false imprisonment, it follows that where an officer has lawfully arrested an individual, he may detain such person for a time reasonably necessary to bring the arrestee before a magistrate, or to obtain a warrant. *See* I.C. 35-1-21-1; *Williams v. State* (1976) 264 Ind. 664, 348 N.E.2d 623; *Matovina v. Hult* (1955) 125 Ind.App. 236, 123 N.E.2d 893. Furthermore, an arresting officer has the right to use such reasonable force as necessary to effect an arrest and to take a prisoner to jail. *Birtsas v. State* (2d Dist. 1973) 156 Ind.App. 587, 297 N.E.2d 864.

In the instant case, Gomez lawfully arrested Adams. In so doing, he was authorized to detain him for the time reasonably necessary to obtain a warrant or transport Adams to jail. The facts reveal that upon the making of the arrest, a Marion County Sheriff's deputy was hastened to the scene to take custody of Adams, at which time Adams' detention by Gomez, Green and Guffey terminated. There is no evidence that the detention was unreasonable. In fact, Gomez released Adams to the Sheriff's Department as soon as was practicable. Under these circumstances, we find no evidence to support the alleged false imprisonment. The judgment insofar as it may be premised upon this theory is erroneous.

### III.

### FORGERY AND CONVERSION AS WITHIN SCOPE OF EMPLOYMENT

Nora Security argues that it may not be held vicariously liable for the acts of Go-

---

**6.** In debating whether certain elements necessary to a malicious prosecution action are present, Adams and Nora Security disagree as to whether the dropped charges against Adams in the first criminal prosecution, which were later refiled, constitute a sufficient "termination of the prosecution in favor of the plaintiff." Because we have addressed the malicious prosecution on other grounds, it is unnecessary to treat this issue. Likewise, because we reverse these counts, we do not reach the alleged error of the trial court's refusal to continue the trial of this case until such time as the second criminal prosecution against Adams had been completed.

**7.** Indiana's disorderly conduct statute, I.C. 35-45-1-3, provides:
"A person who recklessly, knowingly, or intentionally: (1) engages in fighting or tumultuous conduct; (2) makes unreasonable noise and continues to do so after being asked to stop ... commits disorderly conduct, a Class B misdemeanor."

**8.** I.C. 7.1-5-1-3 provides:
"It is a Class B misdemeanor for a person to be in a public place or a place of public resort in a state of intoxication."

**9.** I.C. 35-44-3-3 provides:
"A person who knowingly or intentionally: (1) forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of his duties as an officer; (2) forcibly resists, obstructs, or interferes with the authorized service or execution of a civil or criminal process or order of a court; or (3) flees from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop; commits resisting law enforcement, a Class A misdemeanor."

mez relating to forgery or conversion because these acts were not within the scope of his employment.

The doctrine of respondeat superior provides that vicarious liability may be imposed upon an employer for the wrongful or tortious acts of an employee where the employee's actions are within the scope of his employment. *Trinity Lutheran Church, Inc. of Evansville, Ind. v. Miller* (1st Dist.1983) Ind.App., 451 N.E.2d 1099. The determination is dependent on the facts and circumstances of each case, *Gibbs v. Miller* (3d Dist.1972) 152 Ind.App. 326, 327, 283 N.E.2d 592, and is generally a question of fact for the jury. *Wilson v. Kauffman* (3d Dist.1973) 156 Ind.App. 307, 296 N.E.2d 432. A master is not liable for acts of his servant committed outside the line of his duty and not connected with his master's business, even though the particular injury could not have occurred without the facilities afforded by the relation of the servant to this master. *Louisville & Nashville R.R. Co. v. Gillen* (1906) 166 Ind. 321, 76 N.E. 1058. Furthermore, an act of a servant is not within the "scope of employment" if it is done with no intention to perform it as part of or incident to the service for which he is employed. *Wells v. Northern Indiana Public Service Co.* (1942) 111 Ind.App. 166, 40 N.E.2d 1012. Nonetheless, even though the employee's predominant motive in performing the act is to benefit himself, the act may still fall within the "scope of employment" if the employee's purpose, to an appreciable extent, was also to further his master's business. *Vincennes Packing Corp. v. Trosper* (1939) 108 Ind.App. 7, 23 N.E.2d 624; *Great American Tea Co. v. Van Buren* (1941) 218 Ind. 462, 33 N.E.2d 580.

These considerations form the parameters by which to gauge Gomez's actions relative to the scope of his employment. The relevant facts restated briefly, are these: Gomez, while in the employ of Nora Security and during the course of Adams' arrest, obtained Adams' personal papers, including his Preston-Safeway check-cashing card. Gomez attached these items to a clipboard in the Nora Security vehicle while filling out forms pertaining to Adams' arrest. When the Marion County Sheriff's deputy arrived to take custody of Adams, Gomez gave him Adams' driver's license but retained the rest of the papers. At the end of Gomez's shift, he transferred these papers from the Nora Security vehicle to his own car and drove him from work with Adams' personal effects in his car where they remained. Later that same day, Gomez forged Adams' name on a blank corporate check which had been taken from Omnibus George and Company, endorsed Adams' signature on the back, and cashed the check at Preston-Safeway with the aid of Adams' Preston-Safeway check-cashing card.

The forgery occurred several hours after Gomez had terminated his duty shift. It was divorced in time, place and purpose from Gomez's employment duties. Indeed, the only link between the forgery and Nora Security was that Gomez was enabled to commit the act by virtue of his confiscation of Adams' papers while performing his duties as a security officer. We hold, as a matter of law, that the act of forgery was not committed within the scope of Gomez's employment by Nora Security.

The determination of whether the conversion occurred within the scope of employment presents a more difficult question. This act is not so easily divorced in time, place, or purpose from Gomez's employment duties. As a security officer, Gomez was authorized to request, receive and retain personal identification while investigating disturbances or in effecting arrests. Furthermore, he was authorized to retain confiscated personal effects until they were turned over to the Nora Security office. Nora Security did not authorize him to retain such items longer than the time practicably required to return to the Nora Security office, nor was he authorized to retain the items for his own use.

While the evidence of conversion is concrete, the inferences which may be drawn from the facts as they pertain to the

scope of employment are not without conflict. Adams' theory is that Gomez formed an intent to retain Adams' check-cashing card for his own unlawful use during the course of the arrest. At that point in time, Gomez's request for and retention of Adams' personal effects was authorized as part of the arrest procedure. Though Gomez's motives may have been personal, the confiscation was undertaken in furtherance of Nora Security business. Therefore, even though his subsequent use of the property was unauthorized, it cannot be said that the acts of taking and retaining Adams' papers were only incidental to his employment, distant in time and place from his employment, or, not in furtherance of the service for which Gomez was employed. Under this theory, Gomez acted within the scope of employment.

Under Nora Security's theory, the conversion did not occur until the following afternoon, several hours after Gomez had gone off duty. Nora Security contends that the property was not converted until Gomez formed the intent to keep it and use it for his own purpose. Gomez testified that he inadvertently placed Adams' papers in his own vehicle because he was tired, had been on duty all night, and was anxious to get home for some rest. Gomez stated that it did not occur to him to use Adams' identification to cash the forged check until the following afternoon when his car ran out of gas near a Preston-Safeway store. He further stated that he had no money, was in financial straits at the time, and only in those dire circumstances did he, at that moment, decide to forge and cash the check. Because Gomez did not form an unlawful intent until many hours after he had gone off duty, because his actions were removed in time and place from his employment, and because no purpose of Nora Security was served by the unauthorized act, Nora Security urges that Gomez was not within the scope of his employment. Therefore, it may not be held liable for his acts under the theory of respondeat superior.

Nora Security advances *Eagle Machine Co., Inc. v. American District Telegraph Co.* (1957) 127 Ind.App. 403, 140 N.E.2d 756, as controlling authority for the proposition that conversion does not fall within the scope of employment.

In *Eagle Machine,* the defendant was engaged in the business of selling and maintaining burglary, holdup, and fire alarm systems. Eagle Machine Co., an auto parts dealer, was one of the companies for whom the defendant provided services. On a number of occasions the defendant's employees had been called upon to maintain the alarm systems at Eagle Machine Co. Two of the defendant's employees stole auto parts from Eagle Machine Co. when answering or maintaining its alarm system. The defendant raised, as its "pivotal question," whether respondeat superior liability could be imposed for the acts of its employees. The Court stated:

"In this case, the evidence is uncontradicted that the employees of appellees were not authorized 'to pick up or carry and transport any merchandise' on the premises of appellants." 140 N.E.2d at 759.

The court found no respondeat superior liability and sustained the directed verdict of the trial court in favor of the defendant on the ground that Eagle Machine had presented insufficient evidence to make out a *prima facie* case of conversion. *Id.* at 759.

We find *Eagle Machine* unpersuasive and distinguishable upon its facts. In *Eagle Machine,* the duties of the employees did not include confiscation or retention of property, nor were the employees authorized to handle business property or inventory with the exception of the alarm system. Furthermore, the nature of their acts were entirely different than the service for which they were employed, and were motivated entirely by personal interests rather than the employer's interest. *Eagle Machine* is inapplicable to the instant case because Gomez's actions were, at least for a time, authorized by his employer, related to the service for which he was employed,

and motivated to an extent by Nora Security interests.

In accordance with our standard of review, that the court, on appeal, cannot reweigh the evidence nor judge the credibility of the witnesses, and will draw all reasonable inferences and intendments in favor of the appellee, we find that the inferences regarding whether the conversion occurred within the scope of employment must be drawn in favor of Adams. There was sufficient evidence for the jury to reasonably conclude that Gomez was within the scope of his employment when he converted the check-cashing card to his own use. For reasons hereinafter stated, however, we may not affirm the judgment upon this ground.

## IV.

### FORGERY AS CONSTITUTING LIBEL, SLANDER OR DEFAMATION

Adams contends that he was libeled, slandered, and his character and reputation defamed because Gomez forged Adams' endorsement on the stolen check and cashed it at Preston-Safeway with the aid of Adams' check-cashing card. Gomez's actions resulted in a criminal investigation of Adams and the filing of forgery charges against him. Adams claims that he suffered humiliation, fright, emotional distress, and was subjected to threats of "doing time in the penitentiary" if he didn't confess.

Because these claims are predicated upon Gomez's forgery, and because we have determined that Nora Security was not liable for Gomez's forgery, it having occurred independent of his employment with Nora Security, it follows that Nora Security cannot be liable for the alleged injuries which stemmed from the forgery. Therefore, it is unnecessary for us to address Adams' novel theory that the subject of a forged instrument may be defamed by virtue of a forged signature and the consequences thereof.

## V.

### INSTRUCTION PROHIBITING ALLOCATION OF DAMAGES

Nora Security argues that it was prejudiced by the giving of an instruction which directed the jury not to allocate damages between it and Gomez but to return judgment in a single sum against both defendants if it found that Adams was entitled to recover against both defendants. The prejudice alleged is that the instruction mandated that Nora Security be held jointly liable with Gomez for *all* alleged injuries without regard for whether the injuries committed by Gomez occurred within the scope of his employment.

We agree that the instruction, in this case, was improper. While it is settled that in Indiana a joint tort-feasor is not entitled to contribution from other joint tort-feasors, thus precluding an allocation of damages between them, *Barker v. Cole* (3d Dist.1979) Ind.App., 396 N.E.2d 964, the relationship between employer and employee under the doctrine of respondeat superior is not strictly that of joint tort-feasors. *Henry B. Steeg & Associates, Inc. v. Rynearson* (1968) 143 Ind.App. 567, 241 N.E.2d 888. Where the master's liability for the act of his servant is based solely upon respondeat superior, and not upon any personal share in the act, a suit may be maintained against both and their liability is regarded as both joint and several even though they are not considered joint tort-feasors. *Biel v. Kirsch* (1958) 130 Ind.App. 46, 153 N.E.2d 140. In such instance, it is proper for the court to instruct the jury not to apportion damages but to return a single sum judgment against both defendants. However, as the employer is *not* liable for those acts of its employee which are not committed within the scope of employment, *Bryan v. Pommert* (1941) 110 Ind.App. 61, 37 N.E.2d 720, the giving of such an instruction, where the employee's act occurred outside the scope of employment is clearly erroneous.

The factual posture of the case, as submitted to the jury, contemplated some

acts for which Nora Security and Gomez might be held jointly and severally liable, other acts for which only Gomez might be held liable, and an alleged malicious prosecution for which only Nora Security might be held liable.[10]

The questioned instruction directed the jury to return only a single unapportioned damage award if any single act of Gomez was within the scope of employment. It therefore impliedly required the jury to hold Nora Security jointly liable for any other acts committed by Gomez outside the scope of his authority. It was erroneous and requires that the judgment be reversed.

## VI.

### PUNITIVE DAMAGES

Finally, it is argued that the award of punitive damages must be reversed because:

A. The Indiana Supreme Court, during the pendency of this appeal, altered the standard of proof necessary to an award of punitive damages to require the more stringent showing of "clear and convincing evidence" of the kinds of oppressive conduct upon which punitive damages must be founded;

B. The discharge in bankruptcy of the compensatory damages sought against Gomez precluded an award of punitive damages; and

C. Punitive damages were improperly awarded upon causes of action for which Gomez was also subject to criminal prosecution.

### A.

While this case was pending on appeal, the Indiana Supreme Court decided *Travelers Indemnity Co. v. Armstrong* (1982) Ind., 442 N.E.2d 349, in which it changed the degree of proof required for an award of punitive damages from a preponderance

of the evidence to clear and convincing evidence. In so doing, the court retroactively applied the higher standard to the case before it. Likewise, this court recently applied, retroactively, the new punitive damages standard of proof to a case pending on appeal at the time the *Travelers* decision was decided. *Farm Bureau Mutual Insurance Co. v. Dercach* (3d Dist. 1983) Ind.App., 450 N.E.2d 537.

Appellants urge that because this case, also, was pending on appeal when *Travelers* was decided, the higher standard of clear and convincing evidence must, in like manner, be retroactively applied. Were it necessary for us to finally determine the punitive damages issue on this appeal, we would do as appellants request. However, by reason of our determination that the apportionment of damages instruction was erroneous, the entire matter of damages must be retried.

### B.

 Gomez contends that, as a matter of law, his discharge in the bankruptcy proceeding of Adams' claim for compensatory damages precludes an award of punitive damages against him. We agree. It is elementary to the law of punitive damages that compensatory damages are a prerequisite for any award of punitive damages. *Baker v. American States Ins. Co.* (1st Dist.1981) Ind.App., 428 N.E.2d 1342; *McCormick Piano & Organ Co. Inc. v. Geiger* (3rd Dist.1980) Ind.App., 412 N.E.2d 842.

In so holding, we are cognizant that the situation presented is unusual because, in the typical case, a claim for which punitive damages might be awarded is excepted from discharge under the Bankruptcy Code. The exception was created to prevent those who commit willful and malicious injuries from seeking shelter from the consequences of their wrongful acts in bankruptcy. However, because Gomez

---

**10.** The fact that we have held Nora Security not liable for malicious prosecution does not mitigate the dilemma created by the instruction given. To the contrary, such fact renders the instruction even more confusing.

was entitled, as a matter of law, to summary judgment in his favor on the discharge, he is not and cannot be liable for damages of any kind.

## C.

As a general rule, punitive damages are not appropriate where the defendant is or may be subject to criminal prosecution for the same act. *Taber v. Hutson* (1854) 5 Ind. 322. However, a number of exceptions to the general *Taber* rule have developed over the years. As is relevant here, some cases held that punitive damages may be awarded against a corporation for the criminal acts of its agent since the corporation could not be criminally prosecuted for its agent's acts. *Indianapolis Bleaching Co. v. McMillan* (1916) 64 Ind. App. 268, 113 N.E. 1019, *trans. denied* (1917); *Baltimore & O. Sw. R.R. v. Davis* (1909) 44 Ind.App. 375, 89 N.E. 403; *Nicholson's Mobile Home Sales, Inc. v. Schramm* (1st Dist.1975) 164 Ind.App. 598, 330 N.E.2d 785. This exception has been abrogated by the legislative enactment in 1976 of Indiana Code 35–41–2–3, as follows:

"LIABILITY OF A CORPORATION, PARTNERSHIP OR UNINCORPORATED ASSOCIATION.—

(a) A corporation, partnership, or unincorporated association may be prosecuted for any offense; it may be convicted of an offense only if it is proved that the offense was committed by its agent acting within the scope of his authority."
(Burns Code Ed., 1979 Repl.)

Thus, the statute appears to eradicate the rationale for allowing punitive damages against a corporation for the criminal acts of its agent by providing for the criminal liability of the corporation in addition to that of the agent.[11]

Applying I.C. 35–41–2–3 to the facts before us, Nora Security bears potential criminal liability for any criminal act committed by Gomez while "within the scope of his authority." These facts place Nora Security back within the general *Taber* rule which precludes punitive damages where criminal sanctions are possible.[12] Therefore, the award of punitive damages against Nora Security must be reversed.

To summarize our disposition of this case, the judgment against Randall Gomez must be reversed and judgment entered in his favor.

As to Nora Security, because the verdict rendered was general, it cannot be determined whether it was premised in whole or in part upon any acts of Gomez which we have held may not be imputed to Nora Security. Therefore, although we have determined the evidence sufficient to permit a jury to determine liability in some respect on the part of Nora Security, we may not affirm the judgment. We may not presume that the jury premised its verdict against Nora Security upon imputed responsibility for conversion and/or assault and battery. Since, however, the evidence would support that conclusion, we must remand for retrial as to Nora Security solely upon those issues and with respect to damages, if any, occasioned by those acts.

The judgment is reversed and the cause remanded for retrial consistent with this opinion.

BUCHANAN, C.J., and SHIELDS, J., concur.

**11.** Indiana Code 35–41–2–3 became effective in 1976 (as added by Acts 1976, P.L. 148.) Therefore, to the extent that *Peoples Trust & Savings Bank v. Humphrey* (1st Dist.1983) Ind.App., 451 N.E.2d 1104, in reliance on *Nicholson's Mobile Home Sales, Inc. v. Schramm* (1st Dist.1975) 164 Ind.App. 598, 330 N.E.2d 785, holds that "[c]orporations are specifically excluded from the prohibition against punitive damages coupled with criminal sanctions," 451 N.E.2d at 1114, it is in error.

**12.** We further note that the Indiana General Assembly, effective September 1, 1984, has removed possible criminal sanctions as a defense in an action for punitive damages. *See* I.C. 34–4–30–2 as added by Acts 1984, P.L. 172.