**John W. CLARK, Individually and as Personal Representative of the Estate of Cory R. Clark, Deceased, Appellant–Plaintiff,**

v.

**ARIS, INC., N.G. Gilbert Corp., Townsend Tree Service, Co., Inc., and Fredrick M. Baer, Appellees–Defendants.**

No. 48A04–0801–CV–19.

Court of Appeals of Indiana.

July 24, 2008.

Sarah Graziano, Amy Van Ostrand–Fakehany, Hensley Legal Group, Indianapolis, IN, Attorneys for Appellant.

Eric D. Johnson, Richard A. Young, Erin A. Clancy, Kightlinger & Gray, LLP, Indianapolis, IN, Attorneys for Appellee Aris, Inc.

## OPINION

BAKER, Chief Judge.

Appellant-plaintiff John W. Clark, individually and as personal representative of the Estate of Cory R. Clark, deceased (collectively, the Estate), appeals the trial court's order entering summary judgment in favor of appellee-defendant Aris, Inc. (Aris), on the Estate's complaint for negligent hiring and retention. The Estate contends that there are multiple issues of

fact rendering summary judgment inappropriate. Finding that Aris did not owe a duty of care to the victims as a matter of law, we affirm.

## FACTS

Aris is an Indiana corporation that supplies traffic controllers to contractors. On January 14, 2004, Fredrick M. Baer applied for employment with Aris. The employment application queried whether Baer had ever been convicted of a crime. Baer replied, "Yes," and when asked to state the details of any convictions, Baer wrote, "Will explain (burglary)." Appellant's App. p. 10. Baer authorized Aris to perform a criminal background check, but Aris did not do so. As of January 14, 2004, Baer's criminal history included convictions for a 1990 class B felony burglary, a 1992 class B felony burglary, and 2001 convictions for two counts of class D felony theft and a class D felony receiving stolen property.

On January 23, 2004, Aris hired Baer to work on traffic control crews supplied to contractors by Aris to control traffic at construction sites. Baer wore a navy uniform with patches on the sleeves, an orange traffic control vest, and a white hard hat. Baer was authorized to control traffic only and had no police powers. Aris had no supervisory employees on any job sites.

On February 25, 2004, Baer was assigned to a Madison County job site where construction was being performed by N.G. Gilbert Corp. (N.G.Gilbert). According to Aris, Baer was under the supervision and control of N.G. Gilbert upon reporting to that job site. Baer left the job site during the middle of his shift without Aris's permission to do so, drove his personal vehicle to the residence of Cory Clark and Jenna Clark, entered the home, and murdered the Clarks. Baer was subsequently found guilty of the murders of the Clarks.

On February 27, 2006, the Estate filed a complaint against Aris, among others, for negligent hiring and retention of Baer. On January 29, 2007, Aris filed a motion for summary judgment, arguing that it was not liable for Baer's actions as a matter of law. Following a hearing, the trial court summarily granted Aris's motion on July 6, 2007. The Estate now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

As we consider the Estate's contention that the trial court erroneously granted summary judgment in Aris's favor, we note that summary judgment is appropriate only if the pleadings and evidence considered by the trial court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905, 909 (Ind.2001); *see also* Ind. Trial Rule 56(C). On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party. *Owens Corning*, 754 N.E.2d at 909. Additionally, all facts and reasonable inferences from those facts are construed in favor of the nonmoving party. *Id.* If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper. *Id.*

An appellate court faces the same issues that were before the trial court and follows the same process. *Id.* at 908. The party appealing from a summary judgment decision has the burden of persuading the court that the grant or denial of summary judgment was erroneous. *Id.* When a trial court grants summary judgment, we carefully scrutinize that determination to en-

sure that a party was not improperly prevented from having his or her day in court. *Id.*

## II. *Negligent Hiring and Retention*

■ The Estate argues that there are issues of fact regarding Aris's liability for negligent hiring and retention of Baer such that summary judgment is improper. To make a successful negligence claim, a plaintiff must establish three elements: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) an injury proximately caused by the breach of that duty. *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind.1991).

■ Turning first to the element of duty, we observe that to determine whether an employer has a duty of care to a person harmed by the conduct of an employee, the court must determine if the employer exercised reasonable care in hiring and retaining the employee. Among other things, to answer this inquiry Indiana courts apply the test enunciated by the Restatement (Second) of Torts section 317 (section 317):

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
>
> (a) the servant
>
> (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
>
> (ii) is using a chattel of the master, and
>
> (b) the master
>
> (i) knows or has reason to know that he has the ability to control his servant, and

> (ii) knows or should know of the necessity and opportunity for exercising such control.

COMMENT:

\* \* \*

> c. Retention in employment of servants known to misconduct themselves. There may be circumstances in which the only effective control which the master can exercise over the conduct of his servant is to discharge the servant. Therefore the master may subject himself to liability under the rule stated in this Section by retaining in his employment servants who, to his knowledge, are in the habit of misconducting themselves in a manner dangerous to others. This is true although he has without success made every other effort to prevent their misconduct by the exercise of his authority as master. Thus a railroad company which knows that the crews of its coal trains are in the habit of throwing coal from the cars as they pass along tracks laid through a city street, to the danger of travelers, is subject to liability if it retains the delinquents in its employment, although it has promulgated rules strictly forbidding such practices.

*See also Konkle v. Henson,* 672 N.E.2d 450, 454 n. 4 (Ind.Ct.App.1996) (quoting section 317 and comment).

■ Although the specific test included in section 317 is part of the inquiry, our analysis does not end there. There are general rules and concepts surrounding the imposition of a duty of care that must also be satisfied. Specifically, our Supreme Court has said that to determine whether to impose a duty of care, three factors must be considered: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns.

*Webb*, 575 N.E.2d at 995. More specifically,

> [i]mposition of a duty is *limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm.* Thus, part of the inquiry into the existence of a duty is concerned with exactly the same factors as is the inquiry into proximate cause. Both seek to find what consequences of the challenged conduct should have been foreseen by the actor who engaged in it. We examine what forces and human conduct should have appeared likely to come on the scene, and we weigh the dangers likely to flow from the challenged conduct in light of these forces and conduct.

*Id.* (citations omitted) (emphasis added). In other words, "the foreseeability component of duty requires a ... general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence." *Williams v. Cingular Wireless*, 809 N.E.2d 473, 477 (Ind.Ct.App. 2004). Ordinarily, whether a duty exists is a question of law for the court to decide. *Rhodes v. Wright*, 805 N.E.2d 382, 386 (Ind.2004). "Sometimes, however, the existence of a duty depends upon underlying facts that require resolution by the trier of fact." *Id.*

First, we will examine and apply the general concepts surrounding duty and foreseeability, determining whether, as a matter of law, the Clarks were reasonably foreseeable victims who were injured by a reasonably foreseeable harm. In *Frye v. American Painting Co.*, a painting company (American) hired Robert Hicks as a painter in April 1991. 642 N.E.2d 995 (Ind.Ct.App.1994). Eleven days after he was hired, Hicks committed a burglary, theft, and arson in the apartment of his former girlfriend, whom he had previously threatened and beaten. *Id.* at 997. When the police attempted to arrest Hicks, he fled in a van owned by American, and when he was apprehended, he was in possession of a bag of marijuana. American continued to employ Hicks as a house painter, notwithstanding its knowledge of the above crimes and Hicks's poor work performance and attendance. In fact, American even promoted Hicks to the position of crew leader.

The plaintiff, Frye, hired American to paint the inside of his home, and in January 1992, while painting Frye's home, Hicks rifled through one of the closets and discovered some cash and credit cards. Later that night, Hicks burglarized and set fire to Frye's home and later used credit cards stolen from the residence. Frye filed a complaint against American for negligent hiring and/or retention of Hicks. The trial court entered summary judgment in American's favor, Frye appealed, and a panel of this court reversed, finding as follows:

> ... American had knowledge that Hicks had committed a burglary, theft, and arson, upon his former girlfriend's apartment-crimes which were remarkably similar to the crimes committed against Frye. A reasonable jury could find that American was also aware that Hicks' competence and stability were at least occasionally impaired by alcohol abuse. Moreover, Frye supported his claim with expert testimony. The questions of whether American should have foreseen that Hicks posed a danger to its customers and whether it breached its duty to Frye by retaining Hicks in its employment should be resolved by a jury. Therefore, we must reverse and remand for trial.

*Id.* at 999.

Thus, in *Frye*, the employer enabled its employee, a known arsonist, thief, and bur-

glar, to access the inside of clients' homes. It is evident, therefore, that the residents of those homes were reasonably foreseeable victims and that the resulting harm—arson, burglary, and theft—was also reasonably foreseeable to the employer. In Dean Prosser's treatise on torts, he comments on an employer's responsibility for its employee's criminal acts:

> There are, however, other situations, in which either a special responsibility resting upon the Defendant for the protection of the Plaintiff, or *an especial temptation and opportunity for criminal misconduct* brought about by the Defendant, will call upon him to take precautions against it. . . . The Defendant may bring the Plaintiff into contact with individuals of known criminal tendencies, as for example, by hiring them, *under conditions in which opportunity for crime is afforded.*

*Prosser and Keeton on Torts* § 33 at 201–03 (5th ed.1984) (emphases added).

Here, unlike *Frye* and unlike the circumstances described by Prosser, Aris hired Baer to flag traffic at a construction site. This job did not put him into personal contact with citizens, it did not provide access to people's homes or property, and it authorized him to do nothing more than stand on the street and control the flow of traffic. To commit the murders of the Clarks, Baer left his job in the middle of a shift, got into his personal vehicle, drove several miles, broke into the Clarks' residence, and murdered Cory and Jenna Clark. Tr. p. 6. We simply cannot conclude that Cory and Jenna Clark, who lived miles from the construction site in a residence that Baer was not authorized to enter for any purpose whatsoever, were reasonably foreseeable victims, or that the tragic harm that befell them was reasonably foreseeable.[1] It would be a closer call if Baer had carjacked a vehicle passing by the construction site, inasmuch as it could be argued that the vehicle's owner would be a more foreseeable victim than the Clarks. But given these facts, we find as a matter of law that the Clarks were not reasonably foreseeable victims who were injured by a reasonably foreseeable harm. Thus, as a matter of law, Aris did not have a duty of care to the Clarks and the trial court properly granted summary judgment in Aris's favor.

### III.   Respondeat Superior

■■   The Estate also argues that Aris may be liable pursuant to a theory of respondeat superior, pursuant to which an employer is liable for its employees' actions that were committed within the scope of their employment. *Board of Sch. Comm'rs v. Pettigrew*, 851 N.E.2d 326, 332 (Ind.Ct.App.2006), *trans. denied.* Respondeat superior is a theory of liability that is necessarily distinct from liability based on negligent hiring and retention, which accrues when an employee " '*steps beyond the recognized scope of his employment* to commit a tortious injury upon a third party[.]' " *Id.* (quoting *Tindall v. Enderle*, 162 Ind.App. 524, 529, 320 N.E.2d 764, 767–68 (Ind.Ct.App.1974)) (emphasis added). A plaintiff could theoretically plead both theories of liability in the alternative; however, the Estate did not do so. In-

---

1. Even if we were to accept for argument's sake that Aris should have conducted a thorough criminal background check of Baer—which we by no means hold herein—although Baer's criminal history is replete with a number of convictions for burglary, theft, and receiving stolen property, nothing in that his-tory should have suggested to Aris that he was capable of murder. Thus, even if we were to find that Aris should have checked into Baer's criminal history, that holding would not render the harm that came to the Clarks to be reasonably foreseeable.

stead, the Estate raised only a claim of negligent hiring and retention against Aris. Inasmuch as the Estate's complaint is not based on a theory of respondeat superior—indeed, nowhere does the complaint allege that Baer was acting in the course and scope of his employment with Aris when he murdered the Clarks—it may not now raise the theory on appeal. Consequently, we will not address the arguments related to Aris's alleged liability under a theory of respondeat superior.

The judgment of the trial court is affirmed.

MATHIAS, J., and BROWN, J., concur.