Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 12 2014, 10:44 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**R. BRIAN WOODWARD**
**DAVID E. WOODWARD**
Woodward & Blaskovich, LLP
Merrillville, Indiana

ATTORNEYS FOR APPELLEES:

**NICHOLAS A. SNOW**
Harris Law Firm, P.C.
Crown Point, Indiana

**KATHERINE Y. GAPPA**
Bruce P. Clark & Associates
St. John, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| STACY KNIGHTEN, ) | |
| ) | |
| Appellant-Plaintiff, ) | |
| ) | |
| vs. ) | No. 45A04-1312-CT-632 |
| ) | |
| EAST CHICAGO HOUSING AUTHORITY, ) | |
| Individually and d/b/a WEST CALUMET ) | |
| COMPLEX, DAVIS SECURITY SERVICE, LLC, ) | |
| and DONNELL CALDWELL, ) | |
| ) | |
| Appellees-Defendants. ) | |

APPEAL FROM THE LAKE CIRCUIT COURT
The Honorable John R. Pera, Judge
Cause No. 45D10-1105-CT-96

**September 12, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**GARRARD, Senior Judge**

Stacy Knighten appeals from the trial court's order granting summary judgment in favor of East Chicago Housing Authority ("ECHA") and Davis Security Service, LLC ("Davis"), in her action to recover damages for injuries she suffered after an incident at an ECHA property known as West Calumet Complex ("WCC"). Concluding that there are no genuine issues of material fact precluding the entry of summary judgment in favor of ECHA and Davis, we affirm.

ECHA, a public housing authority in East Chicago, operates WCC. On March 26, 2009, ECHA entered into a contract with Davis for the provision of security services for WCC. Donnell Caldwell, an employee of Davis, was assigned to work in a guard shack located at the front entrance of WCC sometime in June or July 2010. Caldwell's duties were to monitor traffic and operate an entry gate allowing access to WCC. Knighten, who was a tenant of WCC, was involved in a romantic relationship with Caldwell.

On August 7, 2010, Caldwell, who was on duty at the WCC guard shack, allowed Knighten and her friend to use his personal vehicle to drive to a liquor store. Upon Knighten's return from the liquor store, Knighten and Caldwell argued about Knighten having spent all of his money and Caldwell's belief that Knighten was driving his vehicle while intoxicated. The argument escalated to the point that Caldwell ordered Knighten to exit his vehicle and to walk home. Caldwell returned to the guard shack, retrieved his handgun, and set the traffic gate to automatically allow all incoming traffic into WCC property. Next, Caldwell entered his vehicle to drive Knighten's friend, who also lived in WCC, home and drove away from his post.

After Caldwell returned to the area of the guard shack, he discovered that Knighten remained there awaiting his return. Knighten angrily confronted Caldwell, who had not re-entered the guard shack, and the two engaged in a heated argument. Knighten admits that at some point during the course of the entire confrontation she damaged the entrance gate. She turned away from Caldwell and began walking home when Caldwell drew his handgun and fired a shot which struck Knighten's backside. Ultimately, the gunshot injury left Knighten paralyzed from the waist down.

Knighten filed a complaint against ECHA, Davis, and Caldwell alleging that during the course of his employment and while at WCC, Caldwell negligently discharged his firearm causing Knighten to suffer permanent injuries. ECHA and Davis filed motions for summary judgment, which were granted by the trial court after a hearing was held on those motions. Knighten had filed a response to the motions for summary judgment and a cross-motion for summary judgment, which was denied in the same order. Knighten now appeals.

Knighten appeals from the trial court's order granting ECHA's and Davis's motion for summary judgment. "When reviewing a ruling on a motion for summary judgment, our standard of review is the same as it is for the trial court." *Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012). "[S]ummary judgment is appropriate only if the pleadings and evidence considered by the trial court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Clark v. Aris, Inc.*, 890 N.E.2d 760, 762 (Ind. Ct. App. 2008). "On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving

3

party." *Id*. "Additionally, *all facts and reasonable inferences from those facts* are construed in favor of the nonmoving party." *Id*. (emphasis added). "If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper." *Id*. "The fact that the parties make cross-motions for summary judgment does not alter our standard of review." *Ind. Farmers Mut. Ins. Grp. v. Blaskie*, 727 N.E.2d 13, 15 (Ind. Ct. App. 2000). "Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Id*. Thus, contrary to Knighten's assertion, our standard of review does not require us to consider only the facts most favorable to Knighten, the nonmoving party. We are to consider all facts and reasonable inferences from those facts in a light most favorable to Knighten, the nonmoving party.

Knighten's complaint alleged negligence and negligent hiring and supervision. Davis's motion for summary judgment alleged that Davis owed no duty of care to Knighten and that it was not liable for Caldwell's actions because at the time of the argument and Knighten's injury, Caldwell had turned from his employer's business to serve some purpose of his own. Davis's motion further asserted that it was not liable for negligent hiring and retention of Caldwell because Knighten was not a reasonably foreseeable victim injured by a reasonably foreseeable harm. ECHA's motion for summary judgment asserted statutory immunity under the Indiana Tort Claims Act. Knighten responded to ECHA's assertion of immunity by claiming that ECHA had assumed a duty of care to her by contract and that ECHA owed her a non-delegable duty based upon premises liability.

We first observe that Knighten has not presented any argument in support of reversal of the trial court's entry of summary judgment in favor of ECHA, or presented any issues

4

suggesting that we should review that part of the trial court's order. "The party appealing the grant of summary judgment bears the burden of persuading us that the trial court's ruling was improper." *Morris v. Crain*, 969 N.E.2d 119, 123 (Ind. Ct. App. 2012). "Ind. App. Rule 46(A)(8)(a) states that the argument section of an appellant's brief 'must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on . . . .'" *Shepherd v. Truex*, 819 N.E.2d 457, 463 (Ind. Ct. App. 2004). Additionally, "we will not consider an appellant's assertion on appeal when he has failed to present cogent argument supported by authority and references to the record as required by the rules." *Id*.

Here, there are no assertions made suggesting that the trial court committed reversible error by granting summary judgment in favor of ECHA. Indiana Appellate Rule 66(C) authorizes us to affirm the decision of the trial court with respect to some or all of the parties or issues in whole or in part. Accordingly, we need not address the part of the trial court's summary judgment order granting summary judgment in favor of ECHA as Knighten has not raised issues or presented arguments pertaining to ECHA. Summary judgment for ECHA is affirmed.

The allegations of Knighten's complaint against Davis were based on negligence. "To make a successful negligence claim, a plaintiff must establish three elements: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) an injury proximately caused by the breach of that duty." *Clark*, 890 N.E.2d at 763 (citing *Web v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991)). In negligence actions, summary judgment

5

is "rarely appropriate." *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004). This is so because negligence cases are fact sensitive and are governed by a standard of the objective reasonable person—a standard best applied by the finder of fact after hearing all of the evidence. *Id*. Even so, a defendant is entitled to judgment as a matter of law when the undisputed material facts negate at least one element of the plaintiff's claim. *Id*. at 385.

We first examine whether Caldwell's acts were within or outside the scope of his employment. "Respondeat superior imposes liability, where none would otherwise exist, on an employer for the wrongful acts of his employee which are committed within the scope of employment." *Stropes v. Heritage House Childrens Ctr. of Shelbyville, Inc.*, 547 N.E.2d 244, 247 (Ind. 1989). "An employee is acting within the scope of his employment when he is acting, at least in part, to further the interests of his employer." *Konkle v. Henson*, 672 N.E.2d 450, 456 (Ind. Ct. App. 1996) (citing *Gomez v. Adams*, 462 N.E.2d 212, 223 (Ind. Ct. App. 1984)). "Even if an employee is primarily motivated by self-serving purposes, if he was at least partially serving his employer's interests, liability will accrue." *Id*. at 456-57. "However, simply because an act could not have occurred without access to the employer's facilities does not bring it within the scope of employment." *Id*. at 457.

Further, the type of act committed does not conclusively determine whether the employee was acting within the scope of his employment, and an employer can be vicariously liable for the criminal acts of an employee. *Id*. But an act of a servant is not within the scope of employment if it is done with no intention to perform it as part of or incident to the service for which the servant is employed. *Wells v. N. Ind. Pub. Serv. Co.*,

6

40 N.E.2d 1012, 1013 (Ind. Ct. App. 1942). Here, Caldwell was clearly on a mission of his own when the injury occurred.

Although Knighten argues that Davis is liable for Caldwell's actions because Davis agreed to provide armed security at the guard shack, and Davis argues that Caldwell was assigned to that post as an unarmed guard, those circumstances are not dispositive of Davis's potential liability. The undisputed facts viewed in a light most favorable to Knighten reveal that she was intoxicated when she returned to WCC with her friend in Caldwell's vehicle and at some point damaged the entrance gate. Caldwell and Knighten argued about her intoxication and that she spent more of Caldwell's money than she was told she could spend. Caldwell ordered Knighten out of his vehicle, retrieved his gun from the guard shack, set the gate to automatically allow anyone into WCC property, and drove Knighten's friend to her home on WCC property. When Caldwell returned, instead of resuming his duties at the guard shack, he continued to argue with Caldwell when she angrily confronted him. He drew his weapon intending to frighten her by firing a shot in the air, but instead shot her in the lower back resulting in her permanent injuries. Those facts support the trial court's conclusion that Caldwell had abandoned his duties in favor of addressing personal matters for which Davis is not liable.

Knighten stated in her deposition that Caldwell would patrol WCC property in addition to staffing the guard shack. She argues on appeal that her testimony supports the inference that Caldwell's actions were within the scope of employment even though he had left the guard shack unattended. She further asserts that Caldwell was acting within the scope of his employment by discharging his firearm in an effort to protect WCC property

7

and to control Knighten, who was unruly and disruptive while on WCC property. However, construing that testimony in a light most favorable to Knighten, there is nothing in the record to support an inference that Davis knew about or tolerated Caldwell's actions beyond staffing the guard shack. Therefore, Caldwell's actions were nonetheless out of Davis's control and respondeat superior does not impose liability on Davis.

The trial court's reliance on *Wells*, a case which is analogous to this case, is not inappropriate and is not an indication that the trial court disregarded subsequent case law. Although later cases expand upon the holding in *Wells*, those cases are distinguishable. For instance, in *Mock v. Polley*, 66 N.E.2d 78 (Ind. Ct. App. 1946), the employer directed his employee to remove Polley from his office, and was liable because by his words and actions he encouraged his employee to do the act, which ultimately involved such force that Polley received severe injuries. In *Gomez*, a security officer was authorized as part of his work obligations to retain confiscated personal items from arrestees. After one particular arrest, the security officer developed the idea to convert the arrestee's personal items. We held that the employer was liable for the security officer's actions because a portion of the security officer's actions was authorized, even though his actions in that particular instance were driven by his personal motivation. 462 N.E.2d at 224-25. The subsequent forgery committed by the officer, however, was not within the scope and course of his employment due to the separation in time, place, and purpose of the security officer's official duties. *Id*. at 223.

Here, the evidence established that Caldwell's duties were to remain in the WCC guard shack and monitor the traffic flow. Caldwell's actions, which were outside the guard

8

shack and did not involve monitoring the flow of traffic, were not done at least partially in the service of his employer's interests.

Turning to the allegations of negligent hiring and supervision, we have observed that we "must determine if the employer exercised reasonable care in hiring and retaining the employee." *Clark*, 890 N.E.2d at 763. The test to be applied in making that determination is set forth in the Restatement (Second) of Torts section 317, which provides as follows:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
>    (a) the servant
>        (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
>        (ii) is using a chattel of the master, and
>    (b) the master
>        (i) knows or has reason to know that he has the ability to control his servant, and
>        (ii) knows or should know of the necessity and opportunity for exercising such control.

In addition to this portion of the analysis, our supreme court has stated that three factors must be considered to determine whether to impose a duty of care: (1) the relationship between the parties, (2) the reasonable foreseeability of the harm to the person injured, and (3) public policy concerns. *Clark*, 890 N.E.2d at 763-64 (citing *Webb*, 575 N.E.2d at 995). The imposition of a duty is "limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm." *Id*. at 764 (quoting *Webb*, 575 N.E.2d at 995).

9

The basis of Knighten's allegation is that Davis negligently hired and retained Caldwell as a security guard because his gun permit had expired prior to the shooting. The designated evidence shows that Caldwell's gun permit had in fact expired prior to the shooting and that Davis had notified Caldwell that he needed to renew his gun permit and that he was no longer authorized to carry a handgun while he was on duty. Additionally, the record does show that Davis required Caldwell to undergo a criminal background check, a criminal history screening by the Hammond Police Department and the Indiana State Police Department, and a Sex Offender Screening. The background checks revealed no criminal history for Caldwell. Further, Caldwell was required to submit proof that he was lawfully permitted to carry a handgun and was required to undergo firearm training among other topics.

With respect to the foreseeability component of duty, we are required to undertake a general analysis of the broad type of plaintiff and harm involved, without regard to the particular facts at issue. *Clark*, 890 N.E.2d at 764. Here, there is no evidence that Davis was aware of Caldwell's romantic relationship with Knighten prior to the shooting. Moreover, the record does not reflect that Davis was aware that Caldwell had any violent tendencies. In light of that evidence, it would be unreasonable to conclude that Davis should have foreseen that because Caldwell's gun permit had expired he would confront a person with whom he was romantically involved, with his gun, ultimately injuring her. As such, the trial court correctly determined that the record did not show that Knighten was a reasonably foreseeable victim of a reasonably foreseeable harm such that liability should be imposed on Davis.

In light of the foregoing, we affirm the trial court's decision.

Affirmed.

MAY, J., and PYLE, J., concur.