

I N  T H E

# Court of Appeals of Indiana

Krista B. Gue,

*Appellant/Cross-Appellee-Plaintiff*

v.

Triple E Property Management, LLC,

*Appellee/Cross-Appellant-Defendant*

and

M.C. Berber, LLC,

*Appellee-Defendant*



FILED

Feb 27 2026, 8:26 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

February 27, 2026

Court of Appeals Case No.
25A-CT-832

Appeal from the Marion Superior Court

The Honorable James A. Joven Judge

Trial Court Cause No.
49D13-2304-CT-17482

**Foley, Judge.**

Krista B. Gue ("Tenant") appeals the order granting summary judgment to M.C. Berber, LLC ("Landlord") and Triple E Property Management, LLC ("Property Manager") (collectively, "the Defendants") on claims they were vicariously liable for the actions of Property Manager's employee, Carlos Bernal Gomez ("Employee").[1] Property Manager cross-appeals the partial denial of its summary judgment motion, claiming it was entitled to summary judgment on Tenant's claim of negligent hiring, retention, and supervision.

We affirm in part, reverse in part, and remand for further proceedings.

## Facts and Procedural History

Landlord owns a residence in Indianapolis ("the Property"), which it leased to Tenant in 2021. Property Manager manages and maintains the Property pursuant to a contract with Landlord. While Tenant rented the Property, Employee worked for Property Manager, responding to maintenance requests.

---

[1] Tenant alleged Employee was Carlos Bernal Gomez; however, the designated evidence discloses additional, similar names for Employee, including Carlos A. Gomez Bernal, Bernal Carlos Gomez, Carlos Arturo Gomez Bernal, and Bernal Gomez. *See* Appellant's App. Vol. III pp. 21, 25–26, 28, 30–31.

While living in the Property, Tenant contacted Property Manager about water-related issues. Specifically, Tenant reported that the basement flooded when it rained, which resulted in damage to her personal property. Tenant also reported a leak in the basement that might be "[c]oming from [the] water heater or furnace." Appellant's App. Vol. III p. 41. On the main level of the Property, Tenant reported defective caulking around the bathtub faucet in the sole bathroom, with Tenant concerned about water infiltrating the wall and leaking into an adjacent bedroom. On January 19, 2023—a few weeks after Tenant spoke with Property Manager about issues at the Property—Employee arrived to "make some improvements in the basement and do the bathroom[.]" Appellant's App. Vol. II p. 182. Tenant was on her way out of the Property, but because she recognized Employee from previous repairs, she let him inside to complete the work.

While she was still away from the Property, Tenant reviewed surveillance footage from cameras inside.[2] The footage showed Employee looking through different rooms on the main level before descending to the basement. When Employee emerged from the basement, he went to Tenant's bedroom and rummaged through her bedspread and pillows. Employee then picked up a piece of laundry from the floor and tossed it into a hamper. Subsequently, Employee went to the hamper, dug through it, pulled out a pair of Tenant's

---

[2] At this juncture, there is no dispute about the content of the video footage, which was not directly transmitted on appeal. *Cf.* Appellant's Br. p. 8 n.4 (providing a link to the alleged video footage). Here, we generally recite Tenant's characterization of the footage, which the Defendants do not challenge in briefing.

underwear, raised the underwear to his face, and took a deep breath. Employee returned the underwear to the hamper and spent about two hours going back and forth between his truck and the basement carrying tools and boxes. Tenant used the security system to tell Employee to leave. She also called the police. After this incident, Tenant felt uneasy remaining in the Property and moved out in April 2023. Tenant now lives in fear that she is being watched or monitored in her home, and she has searched her current residence for hidden cameras.

On April 30, 2023, Tenant filed a complaint against the Defendants. Tenant claimed that Employee had committed the torts of invasion of privacy by intrusion ("Intrusion") and intentional or reckless infliction of emotional distress ("IIED/RIED"), and the Defendants were vicariously liable. As to Property Manager, Tenant claimed it was vicariously liable because Employee's acts "were done in the course and scope of his employment[.]" Appellant's App. Vol. II p. 27. As to Landlord, Tenant claimed it was vicariously liable because Employee's acts were performed "pursuant to non-delegable duties assigned to him[.]" *Id.*; *cf.* Tenant's Reply Br. p. 27 n.13 (clarifying the theory of vicarious liability as to Landlord).[3] Tenant further claimed that, independent of a theory of vicarious liability, Property Manager was liable because it breached "respective duties to [Tenant] in [its] employment of [Employee],"

---

[3] Tenant also referred to a common-law duty but later withdrew this claim. *See* Appellant's Br. p. 5 n.2.

including by "failing to properly supervise [Employee]." Appellant's App. Vol. II p. 28.[4]

On August 21, 2024, the Defendants filed separate motions for summary judgment. Landlord asserted that Tenant failed to state a claim upon which relief could be granted, arguing Landlord "cannot be held to be vicariously liable for the acts of [Employee], as it is well established, by both [Tenant's] representation and [Property Manager] [it]self[], that [Employee] was never an employee of [Landlord], but rather solely an employee of Property Manager." *Id.* at 75. Landlord also argued that Property Manager negligently hired Employee and was "solely . . . vicariously liable for the acts of [Employee]," asserting it "cannot be held liable for the actions of an employee of [Property Manager], of which it has no knowledge of and provides no direction to." *Id.* at 78. Turning to Property Manager's motion for summary judgment, Property Manager asserted it could not be vicariously liable for Intrusion or IIED/RIED because Employee's acts were outside the scope of his employment.[5] As to the claim of negligent hiring, retention, and supervision of Employee, Property Manager argued that it could not have foreseen Employee's troubling actions. Property Manager also argued that it lacked notice that "it needed to exercise control over that employee" to prevent the offending conduct. *Id.* at 113.

---

[4] The Defendants' responsive pleadings involved counterclaims and crossclaims not germane to this appeal.

[5] Property Manager also argued, in the alternative, that Employee's actions did not constitute Intrusion. The trial court rejected this argument, which is not at issue on appeal.

Property Manager designated evidence indicating that it conducted pre-employment screening of Employee. That screening process included contacting Employee's previous employer, who reported he was a professional worker. Property Manager also designated evidence that Tenant had not previously complained about Employee.

[8] In response, Tenant designated evidence bearing on the scope of Property Manager's pre-employment screening process. The evidence indicated that Property Manager conducted its own background check by running three searches on the MyCase database—first, for Carlos Gomez Bernal; second, for Carlos Gomez Bernal with a specified birthdate; and, third, for Carlos Gomez, again with that birthdate. *See* Appellant's App. Vol. III pp. 79–81. Tenant pointed out that Employee had provided documents to Property Manager containing variations of the name Carlos Gomez Bernal, including Carlos A. Gomez Bernal, Bernal Carlos Gomez, Carlos Arturo Gomez Bernal, and Bernal Gomez. *See id.* at 21, 25, 26, 28, 30–31. Tenant designated evidence that searching for these variations would have returned nine criminal cases, including cases with felony convictions involving domestic violence, domestic battery, and strangulation of a female victim. *See id.* at 156. However, there was also evidence that Tenant obtained an investigative report from Veracity IIR indicating that, based on the birthdate Employee provided and address information, those cases were not associated with him. The report said: "A review of the provided Indiana Case Numbers determined none of the cases were related to Carlos Arturo Gomez Bernal, date of birth 07/28/1977. Of the

four possible Carlos Bernal[s] in the Indiana cases none of their addresses or dates of birth could be connected to the above-listed Bernal." *Id.* at 246.[6]

[9] A separate report indicated that, had Property Manager conducted additional pre-employment screening, it would have discovered that Employee provided a Social Security Number that was "part of [a] Random Pool" that was "not issued before June 25, 2011[.]" *Id.* at 151. The report indicated that the Social Security Number provided by Employee was not issued to him. *Id.* at 163.

[10] The trial court held a hearing on January 8, 2025. Property Manager argued it could not be liable for negligent hiring because, even if it had conducted a more thorough background investigation, there was "nothing out there to find," and therefore, the scope of its background investigation was not the cause of any injury. Tr. Vol. 2 p. 15. Tenant responded that a genuine issue of material fact existed because Property Manager "has no idea who [Employee] is or what his actual name is, his actual Social Security [N]umber[,] or his actual date of birth." *Id.* at 37. Tenant argued that a more extensive search would have revealed "red flags" and that, at this stage, it was "not [her] burden to prove that the person in this background check is the [person] that [Property Manager] sent into [her] home." *Id.* Tenant further asserted that Property Manager failed "to show as a matter of law that [Employee] did not present a reasonably foreseeable harm[,] and therefore, [it] had no reason to know of his

---

[6] Initially, Tenant did not designate this portion of the Veracity IIR report. However, following a hearing, the trial court directed Tenant to tender this portion of the report, which was part of the designated evidence.

potential for misconduct." *Id.* at 39. Tenant added: "There are way too many questions of fact here for the court to decide that as a matter of law." *Id.*

[11]  As to Tenant's claim that Property Manager could be held vicariously liable for Employee's actions under a theory of respondeat superior, Property Manager maintained that Employee acted outside the scope of his employment when he handled her undergarments. Finally, as to Tenant's claim that Landlord was vicariously liable under a theory that Employee acted pursuant to Landlord's non-delegable statutory and contractual duties, Landlord argued it could not be liable because the only delegated duty was "to go fix the leak." *Id.* at 20. The trial court acknowledged Landlord's position, which it characterized as follows:

> The duty there is to fix the leak. It's to keep the property in repair, but . . . does the duty expand to encompass any misconduct that's not related to that non-delegable duty? And the answer, according to you is, heck, no, it doesn't. Because we didn't hire anybody to go sniff underwear.

*Id.* At one point, the court remarked: "Well, isn't the argument really that the non-delegable duty issue doesn't really apply because[,] ultimately, the duty that [Landlord] could not delegate . . . was its responsibility to fix a leak[?]" *Id.*

[12]  The trial court took the matter under advisement. On April 4, 2025, the trial court issued an order partially granting and partially denying summary judgment. As to Tenant's claim against Property Manager alleging negligent hiring, retention, and supervision, the trial court determined that "[q]uestions regarding the adequacy of [Property Manager's] screening process when hiring

[Employee], as well as the foreseeability of the need for supervision of [Employee], remain in the jury's province." Appellant's App. Vol. II p. 23.

[13] As to Tenant's claims alleging vicarious liability for Intrusion and IIED/RIED, the trial court granted summary judgment to the Defendants. In doing so, the trial court generally focused on whether the designated evidence indicated that Employee's actions were within the scope of his employment. The trial court acknowledged that "[w]hether an act falls within the scope of employment is generally a question of fact," but noted that "when the relevant facts are undisputed and would not allow a jury to find that the tortious acts were within the scope of employment, [a court] may conclude as a matter of law that they were not." *Id.* (alterations in original) (quoting *Cox v. Evansville Police Dep't*, 107 N.E.3d 453, 460 (Ind. 2018)). The court concluded "as a matter of law" that Employee's actions—i.e., "the sniffing of [Tenant's] undergarments"—"were not within the scope of [his] employment with Property Manager." *Id.*

[14] Finally, the trial court briefly addressed Tenant's claims against Landlord. In doing so, it did not discuss the non-delegable duty doctrine. Rather, it found that, if Property Manager could not be vicariously liable under a theory of respondeat superior, then Landlord could not be vicariously liable. The court said that Landlord's "argument . . . against [vicarious] liability" was "even stronger" in that "[Property Manager] was [Employee's] employer, and [Landlord] is one step removed[.]" *Id.* at 24. Upon Tenant's motion, the court directed entry of a final judgment. Tenant now appeals; Property Manager cross-appeals.

## Discussion and Decision

Tenant appeals, and Property Manager cross-appeals, the trial court's disposition of the Defendants' motions for summary judgment. We review summary judgment decisions de novo, applying the same standard as the trial court. *Korakis v. Mem'l Hosp. of S. Bend*, 225 N.E.3d 760, 764 (Ind. 2024). Summary judgment is proper only "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). The party moving for summary judgment has the burden of making a prima facie showing that it is entitled to summary judgment. *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016). If the movant meets this burden, the burden shifts to the non-movant to "set[] forth specifically designated facts" demonstrating "the existence of a genuine issue" of material fact. *Id.*

We review the designated evidence in a light most favorable to the non-movant, resolving all doubts against the movant. *See id.* A genuine issue of material fact exists if "there is 'contrary evidence showing differing accounts of the truth,' or when 'conflicting reasonable inferences' may be drawn from the parties' consistent accounts and resolution of that conflict will affect the outcome of a claim." *Z.D. v. Cmty. Health Network, Inc.*, 217 N.E.3d 527, 532 (Ind. 2023) (quoting *Wilkes v. Celadon Grp., Inc.*, 177 N.E.3d 786, 789 (Ind. 2021)).

# I.   Negligent Hiring, Retention, and Supervision

[17]   We begin with Property Manager's contention that it was entitled to summary judgment on Tenant's claim of negligent hiring, retention, and supervision. This tort requires establishing that the employer breached a duty of care owed to the plaintiff, which proximately caused the plaintiff's injury. *See Clark v. Aris, Inc.*, 890 N.E.2d 760, 763 (Ind. Ct. App. 2008), *trans. denied*. To determine whether an employer owed a duty of care to the plaintiff—i.e., "a person harmed by the conduct of an employee"—Indiana courts apply Section 317 of the Restatement (Second) of Torts. *Id.* This section provides as follows:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
>
>> (a) the servant
>>
>>> (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
>>>
>>> (ii) is using a chattel of the master, and
>>
>> (b) the master
>>
>>> (i) knows or has reason to know that he has the ability to control his servant, and

> (ii) knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 317, Westlaw (database updated Sept. 2025).

[18] On cross-appeal, Property Manager argues that "[n]othing in the designated evidence establishes or raises an inference that [Property Manager] knew or should have known that it needed to control [Employee] to prevent intentional harm outside of his scope of employment." Cross-Appellant's Br. p. 12. Property Manager points out that it conducted a background check by searching MyCase. Property Manager also refers to evidence indicating that (1) it "verified [Employee's] previous employment and was informed he was a professional worker," and (2) "[Tenant] did not make any complaints to [Property Manager] regarding [Employee] prior to January 19, 2023." *Id.*

[19] As our Supreme Court has explained: "In negligence cases, summary judgment is 'rarely appropriate.'" *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004) (quoting *Tibbs v. Huber, Hunt & Nichols, Inc.*, 668 N.E.2d 248, 249 (Ind. 1996)). "This is because negligence cases are particularly fact sensitive and are governed by a standard of the objective reasonable person—one best applied by a jury after hearing all of the evidence." *Id.* Furthermore, "[t]o the extent we 'have any doubts concerning the existence of a genuine issue of material fact, we must resolve those doubts in favor of the nonmoving party.'" *Z.D.*, 217 N.E.3d at 532 (quoting *Reed v. Reid*, 980 N.E.2d 277, 303 (Ind. 2012)). Indeed, "it is well settled that 'Indiana consciously errs on the side of letting marginal

cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims.'" *Id.* (quoting *Hughley v. State*, 15 N.E.3d 1000, 1004 (Ind. 2014)).

[20] In this case, the designated evidence presents a question of material fact as to whether Property Manager had a reason to know that Employee may pose a risk to customers. It is undisputed that Property Manager conducted a basic background search using the name and date of birth Employee provided. However, Employee provided documents with variations on that name, but Property Manager did not search those names. Had Property Manager done so, it would have discovered "nine separate criminal cases . . . including multiple felony convictions involving domestic violence, domestic battery, and strangulation of a female victim." Tenant Reply Br. p. 22 (emphasis removed) (citing Appellant's App. Vol. III pp. 27, 156, 163). While these cases may not have involved Employee based on the birthdate and other information he provided, the designated evidence revealed that Employee utilized a false Social Security Number, which creates an inference that Employee was not who he claimed to be.

[21] We must resolve all doubts in favor of the non-movant and err on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims. *Z.D.*, 217 N.E.3d 532. Here, we ultimately cannot say the designated evidence establishes, as a matter of law, that Property Manager had no reason to know of the necessity of exercising control over Employee to prevent the handling of Tenant's underwear. In other words, we agree with the trial court that a genuine issue of material fact precludes entry of

summary judgment on the claim of negligent hiring, supervision, and retention. We, therefore, affirm the denial of summary judgment on this type of claim.[7]

## II. Vicarious Liability

### A. Respondeat Superior

[22] Tenant challenges the trial court's determination that Property Manager could not be vicariously liable because, as a matter of law, Employee acted outside the scope of his employment when he handled Tenant's undergarments.

[23] Under the doctrine of respondeat superior, an employer may be held vicariously liable for torts committed by an employee acting within the scope of his employment. *Barnett v. Clark*, 889 N.E.2d 281, 283 (Ind. 2008). "Whether an act falls within the scope of employment is generally a question of fact." *Cox*, 107 N.E.3d at 460. A court may resolve a scope-of-employment issue as a matter of law only "when the relevant facts are undisputed and would not allow a jury to find that the tortious acts were within the scope of employment[.]" *Id.*

[24] An injurious act was within the scope of employment if it (1) was "incidental to the conduct authorized"; or (2) "to an appreciable extent, further[ed] the employer's business." *Barnett*, 889 N.E.2d at 283. An act is incidental to an employee's job duties if it originated in activities closely associated with the employee's job. *Walgreen Co. v. Hinchy*, 21 N.E.3d 99, 111 (Ind. Ct. App. 2014)

---

[7] Having identified a genuine issue of material fact, we do not address other evidence bearing on this issue.

(noting this language in a jury instruction was "a correct statement of the law"). In deciding whether an employee's wrongful act was incidental to job duties or originated in activities closely associated with the job, a factfinder "may consider (1) whether the wrongful act was of the same general nature as [the] authorized job duties; (2) whether the wrongful act [was] intermingled with authorized job duties; and (3) whether the employment provided the opportunity or the means by which to commit the wrongful act." *Id.* (collecting cases and concluding this language correctly stated the law).[8]

[25] In *Cox*, our Supreme Court explained that "scope-of-employment liability is rooted in . . . control, . . . holding employers responsible for some risks inherent in the employment context." 107 N.E.3d at 461. The scope of employment encompasses "activities that the employer delegates to employees or authorizes employees to do, plus employees' acts that naturally or predictably arise from those activities." *Id.* This means that the scope of employment "may include acts that the employer expressly forbids; that violate the employer's rules, orders, or instructions; that the employee commits for self-gratification or self-benefit; that breach a sacred professional duty; or that are egregious, malicious, or criminal." *Id.* In short, "[w]hen tortious acts are so closely associated with

---

[8] Property Manager emphasizes the word "and" in this quotation, asserting that "all three [factors] must be present for a finding that the wrongful act was incident to the employee's duties." Cross-Appellant's Br. p. 10. For support, Property Manager relies on the trial court's remarks at the summary judgment hearing. We note, however, that this portion of the law identifies circumstances a fact-finder "*may*" consider in making a scope of employment finding. *Walgreen Co. v. Hinchy*, 21 N.E.3d 99, 111 (Ind. Ct. App. 2014) (emphasis added). These types of circumstances are germane to the ultimate determination of whether the conduct was incidental to authorized work or ultimately furthered the employer's business to an appreciable extent. *See id.*

the employment that they arise naturally or predictably from the activities an employee was hired or authorized to do, they are within the scope of employment, making the employer liable." *Id.* at 462 (noting "the employer is justly held accountable since the risk accompanies the employer's benefit"). But "tortious acts are not within the scope of employment when they flow from a course of conduct that is independent of activities that serve the employer." *Id.*

[26] On appeal, Property Manager invites us to focus narrowly on the specific offending act—the sniffing of underwear—and to conclude that this act bears no resemblance to Employee's authorized duties as a repairman. However, our Supreme Court has rejected this sort of narrow approach, explaining that "the focus in determining the scope of employment 'must be on how the employment relates to the context in which the commission of the wrongful act arose.'" *Id.* at 462 (quoting *Barnett*, 889 N.E.2d at 285). Our Supreme Court applied this approach in *Stropes v. Heritage House Childrens Center of Shelbyville, Inc.*, where a nurse's aide sexually assaulted a physically and mentally disabled resident. 547 N.E.2d 244, 245 (Ind. 1989). In reversing an order granting summary judgment to the employer, the Court did not narrowly focus on the assault but instead examined the broader context of the employee's acts:

> [The employee] began the episode by performing a fully authorized act, stripping the sheets from [the victim's] bed prior to changing the bedding. He was also authorized to undress [the victim] and to touch his genitals and other parts of his body when bathing him and changing his clothes . . . . [The employee] also

ended the episode with a fully authorized act, dressing [the victim] for the day.

*Id.* at 249.

[27] The Court acknowledged the assault "was unauthorized by [the employer] and committed for [the employee's] own gratification," but explained this was not determinative. *Id.* Indeed, the Court noted that a jury "might find that [the employee] acted to an appreciable extent to further his master's business"; that "his actions were, 'at least for a time, authorized by his employer, related to the service for which he was employed, and motivated to an extent by [his employer's] interests'"; and "that, therefore, his wrongful acts fell within the scope of his employment and [the employer] should be accountable." *Id.* at 250 (second alteration in original) (quoting *Gomez v. Adams*, 462 N.E.2d 212, 224–25 (Ind. Ct. App. 1984)). At the same time, the Court explained that, "[c]onversely, a jury might find that [employee's] acts were so 'divorced in time, place[,] and purpose" from his employment duties as to preclude the imposition of liability on his employer." *Id.* (quoting *Gomez*, 462 N.E.2d at 223). In the end, the Court reversed summary judgment because "[t]he nature of the acts were, at the very least, sufficiently associated with [the employer's] authorized duties to escape [resolution] on summary judgment." *Id.*

[28] Similarly, in *Hinchy*, a pharmacist accessed a customer's prescription records and divulged information to the customer's ex-boyfriend. 21 N.E.3d at 104. In identifying a genuine issue of material fact, the court did not focus narrowly on

the unauthorized disclosure but instead examined the offending act within the broader employment context. *See id.* at 108. The *Hinchy* Court remarked:

> [The employee] was authorized to use the [employer's] computer system and printer, handle prescriptions for [the employer's] customers, look up customer information on the [employer's] computer system, review patient prescription histories, and make prescription-related printouts. [The employee] was at work, on the job, and using [work] equipment when the actions at issue occurred. . . . The fact that some of [the employee's] actions were authorized, or incidental to authorized actions, or of the same general nature as authorized actions, precludes summary judgment.

*Id.* at 108.

[29] In the end, we conclude that reasonable minds could disagree as to whether the facts in this case support vicarious liability. Indeed, applying this contextual approach, a reasonable jury could find that Employee's actions originated in activities closely associated with the employment relationship, and therefore, were within the scope of his employment with Property Manager. Here, Employee had access to the Property because he went there to fix the plumbing. Between investigating a leak in the basement and carrying out repairs in the basement, Employee went into other rooms on the main level and engaged in the offending conduct. *Cf. SoderVick v. Parkview Health Sys., Inc.*, 148 N.E.3d 1124, 1130 (Ind. Ct. App. 2020) (identifying a genuine issue of material fact where the conduct was "sandwiched" between "authorized job functions"); *Southport Little League v. Vaughan*, 734 N.E.2d 261, 272 (Ind. Ct. App. 2000)

(identifying a genuine issue of material fact where an equipment manager molested youth athletes in an equipment shed during baseball games, noting that the equipment manager was allowed to use the shed, "some . . . acts were authorized," and his role "gave him the means to lure [the victims] into the . . . shed so that he could commit the sexual molestations"), *trans. denied*.

[30] Having identified a genuine issue of material fact as to whether Employee's actions were within the scope of his employment, we reverse summary judgment on Tenant's claims that Property Manager was vicariously liable for Intrusion and IIED/RIED and remand for further proceedings on the claims.

## B. Non-Delegable Duty

[31] Next, we address Tenant's contention that the trial court erred in determining that Landlord could not be vicariously liable for Employee's actions. At the outset, we observe that tort law encompasses a series of causes of action. *See Z.D.*, 217 N.E.3d at 532. "Some are used alternatively as 'different means of obtaining the same relief for the same harm,' while others are used independently to pursue recovery for distinct harms or when 'various theories of recovery require . . . differing standards of conduct.'" *Id.* (alteration in original) (quoting 1A C.J.S. *Actions* § 174 (2023)). Here, Tenant's claims against Landlord and Property Manager stem from the same general incident. However, the claims involve discrete causes of action and discrete analysis.

[32]     Tenant claims summary judgment was improper because Employee's actions arose out of a non-delegable duty.[9]  In Indiana, there is a "long-standing general rule . . . that a principal is not liable for the negligence of an independent contractor."  *Bagley v. Insight Commc'ns. Co., L.P.*, 658 N.E.2d 584, 586 (Ind. 1995).  Thus, ordinarily, Landlord would not be liable for the negligence of Property Manager or its employee.  There are, however, exceptions to this general rule.  *See id.*  Tenant focuses on an exception that applies "where the principal is by law or contract charged with performing the specific duty[.]"  *Id.*  This exception is sometimes referred to as the non-delegable duty doctrine, where a principal is liable for the actions of its agent in fulfilling the non-delegable duty.  *See id.*[10]  As an exception to the general rule against liability for an independent contractor's actions, the non-delegable duty doctrine applies only in "specific, limited situations," *id.* at 588, where the principal bears

---

[9] Tenant claims Landlord failed to specifically address the non-delegable duty doctrine in proceedings below, instead focusing on scope-of-employment issues germane to the theory of respondeat superior that applied to claims against Property Manager.  Tenant essentially argues that, under the circumstances, Landlord is precluded from arguing that the non-delegable duty doctrine supports the judgment.  However, we conclude the issue is properly before us.  Below, Landlord maintained that it "cannot be held to be vicariously liable for the acts of [Employee], as it is well established, by both [Tenant's] representation and [Property Manager] themselves, that [Employee] was never an employee of [Landlord], but rather solely an employee of [Property Manager]."  Appellant's App. Vol. II p. 75.  Moreover, in characterizing Landlord's position, the trial court questioned whether the non-delegable duty doctrine applied "because ultimately . . . the duty that [Landlord] could not delegate . . . was its responsibility to fix a leak."  Tr. Vol. 2 p. 20.  In any case, as Tenant acknowledges, our standard of review allows us to affirm summary judgment on any theory supported by the designated evidence.  *See, e.g.*, *Carney v. Patino*, 114 N.E.3d 20, 27 (Ind. Ct. App. 2018), *trans. denied*.

[10] The non-delegable duty doctrine is typically applied to hold the principal liable for an agent's *negligence*. *See generally*, *e.g.*, *Bagley v. Insight Commc'ns. Co., L.P.*, 658 N.E.2d 584, 586 (Ind. 1995).  Here, however, Tenant claims Landlord is liable for RIED and the intentional torts of Intrusion and IIED.  As the parties apply the doctrine under the circumstances, we follow their lead and assume without deciding the doctrine applies.

certain duties and the law deems "such duties . . . so important to the community that the [principal] should not be permitted to transfer [responsibility] to another," *Cummings v. Hoosier Marine Props., Inc.*, 363 N.E.2d 1266, 1275 (Ind. Ct. App. 1977).

[33] Tenant argues the non-delegable duty doctrine applies—such that Landlord could be held vicariously liable for Employee's actions—because Landlord delegated certain statutory and contractual duties to Property Manager.[11] Tenant points out that Indiana Code section 32-31-8-5 requires a landlord to provide and maintain plumbing and sanitary systems that are "in good and safe working condition[.]" Tenant also refers to a lease provision titled "Quiet Enjoyment," which specified that Tenant "shall peacefully and quietly have, hold[,] and enjoy" the Property during the lease term. Appellant's App. Vol. II pp. 154, 163. Tenant argues that Landlord "may not simply assign its statutory and contractual duties to its contractor/agent ([Property Manager]) and then feign innocence when the contractor's employee misbehaves; the duty belongs to [Landlord] as a matter of law." Appellant's Br. p. 21.

[34] At times, Tenant invites us to apply "scope of employment" principles to ascertain the scope of Landlord's statutory and contractual duties. But, here, vicarious liability is not premised on an employer-employee relationship.

---

[11] Tenant is not claiming Landlord was negligent in hiring Property Manager as its independent contractor. *Cf. Bagley*, 658 N.E.2d at 587 (recognizing that, when the non-delegable duty doctrine applies, a principal may be liable for the "failure to exercise reasonable care to employ a competent and careful contractor").

Indeed, under the doctrine of respondeat superior, the employer's control over the employee shapes a broader duty based upon the acts of the employee within the broadly defined "scope of employment." *See Cox*, 107 N.E.3d at 461 (noting that the doctrine of respondeat superior is "rooted in . . . control"). And an employer has notice of that broader duty. *Cf. id.* But, under the non-delegable duty doctrine, the understanding of the duty is narrower, as what is known to the principal is the legal duty in the statute or contract, not the responsibility for the broader "scope of employment" risk in hiring its own employees. *See generally Bagley*, 658 N.E.2d at 586–88 (providing background on the doctrine).

[35] We, therefore, must reject Tenant's use of respondeat superior caselaw in informing our determination of the scope of Landlord's non-delegable duties.

## 1. Statutory Duty

[36] We begin with the statutory duty to provide and maintain plumbing and sanitary systems in good and safe working condition. Tenant argues that Landlord could be vicariously liable under the non-delegable duty doctrine because there was some kind of nexus between (1) the duty delegated to Property Manager (and undertaken by Employee), i.e., the authorized repair work and (2) the offending conduct, which occurred while Employee was on the Property in fulfillment of the delegated duty. This sort of broad approach resembles a respondeat superior analysis, which requires examining the "context in which the commission of the wrongful act arose." *Cox*, 107 N.E.3d at 462 (quoting *Barnett*, 889 N.E.2d at 285). As earlier discussed, the non-delegable duty doctrine involves a narrower understanding of a principal's duty.

Here, Landlord's statutory duty was to provide working plumbing and sanitary systems. It is undisputed that Landlord relied on Property Manager—and ultimately Employee—to maintain those systems. However, there is no contention that, as a result of Employee's actions, Tenant was deprived of functioning plumbing and sanitary systems. Instead, Tenant seeks to hold Landlord vicariously liable for conduct occurring around the time Employee was repairing a leak. This claim falls outside the non-delegable duty doctrine. *Cf. Birrell v. Ind. Auto Sales & Repair*, 698 N.E.2d 6, 8–9 (Ind. Ct. App. 1998) (applying the doctrine and determining a principal could not be held vicariously liable for a delegee's reckless conduct because, although the plaintiff identified a statutory duty, there was no violation of that duty), *trans. denied*.

Because there is no contention that Employee's offending actions resulted in a breach of Landlord's specific, non-delegable statutory duty, we conclude that Tenant was unable to proceed on this theory of vicarious liability against Landlord.

## 2. Contractual Duty

Turning to the contractual covenant of quiet enjoyment, this type of duty has traditionally served "two protective functions: first, it protected the lessee from claims by parties with title to the demised premises paramount to the lessor; and secondly, it protected the lessee from unlawful entries by the lessor upon the demised premises." *Sigsbee v. Swathwood*, 419 N.E.2d 789, 797 n.8 (Ind. Ct. App. 1981). "This covenant is also found to protect the possessory interests of the lessee in the beneficial use and enjoyment of the demised property." *Id.*

Put differently, the covenant of quiet enjoyment aims to prevent a landlord from interfering with the tenant's possessory interest in the leased property during the term of the lease. *See id.*

[40] Here, there is no indication that Tenant was deprived of physical access to the Property. Moreover, there was no unlawful entry into the Property, in that Tenant opened the door and let Employee inside to conduct a repair. While it is undisputed that Employee did more in Tenant's residence than what was necessary to effectuate the repairs, there is no evidence that Employee interfered with or interrupted Tenant's possessory interest in the Property. In other words, there is no indication that Landlord interfered with Tenant's *tenancy*, which is what Landlord's contractual duties obligated it to provide. Because there was no such interference, Landlord is entitled to summary judgment on Tenant's claim premised on the breach of the covenant of quiet enjoyment.

[41] For the foregoing reasons, we conclude Landlord was entitled to summary judgment on Tenant's claims it was vicariously liable under the non-delegable duty doctrine. We therefore affirm summary judgment as to these claims.

## Conclusion

[42] The trial court did not err in denying Property Manager's motion for summary judgment on Tenant's claim of negligent hiring, supervision, and retention, nor did it err in determining that, under the circumstances, Landlord could not be vicariously liable for Employee's actions. We, therefore, affirm those aspects of the judgment. However, because we have identified genuine issues of material

fact bearing on whether Property Manager may be vicariously liable under a theory of respondeat superior for claims of intrusion and IIED/RIED, we reverse that portion of the judgment and remand for further proceedings.

[43] Affirmed in part, reversed in part, and remanded.

May, J. and Altice, J., concur.

ATTORNEY FOR APPELLANT/CROSS-APPELLEE

Neal F. Eggeson, Jr.
Eggeson Privacy Law
Fishers, Indiana

ATTORNEY FOR APPELLEE, M.C. BERBER, LLC

Jynell D. Berkshire
Berkshire Law LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE/CROSS-APPELLANT, TRIPLE E PROPERTY MANAGEMENT, LLC

Tammy J. Meyer
Kenneth A. Ewing
Metzger Rosta LLP
Noblesville, Indiana